**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| JULIET MURPHY, et al., | Consolidated Case No. 4:21-cv-00178-ALM |
| Plaintiffs, | |
| v. | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| TOYOTA MOTOR CORPORATION, et al., | |
| Defendants. | **JURY TRIAL DEMANDED** |

<u>**CONSOLIDATED CLASS ACTION COMPLAINT**</u>

## TABLE OF CONTENTS

*Page*

I     INTRODUCTION ..................................................................................................1

II    JURISDICTION AND VENUE ...........................................................................3

III   PARTIES .............................................................................................................4

     A.     Plaintiffs ................................................................................................. 4

           1.     Michigan Plaintiff Juliet Murphy...................................................4

           2.     California Plaintiff Penni Lavoot ...................................................5

           3.     Texas Plaintiff Ranay Flowers......................................................6

           4.     Florida Plaintiff Paola Guevara .....................................................8

           5.     Illinois Plaintiff Lee Krukowski .................................................9

           6.     New Hampshire Plaintiff Pamela Woodman.............................11

           7.     Missouri Plaintiff Kris Huchteman .............................................12

     B.     Defendants ........................................................................................... 14

           1.     Toyota Motor Corporation..........................................................14

           2.     Toyota Motor Sales, U.S.A., Inc. ...............................................14

           3.     Toyota Motor North America, Inc. ..............................................14

           4.     Toyota Engineering & Manufacturing North America, Inc....................15

IV    FACTUAL ALLEGATIONS ..............................................................................18

     A.     The Nature of the Battery Defect....................................................... 18

     B.     The Class Vehicles Suffer from the Battery Defect............................ 19

     C.     Toyota's Knowledge of the Battery Defect's Safety Implications ..................... 20

           2013 TOYOTA RAV4................................................................. 21

           2014 TOYOTA RAV4................................................................. 37

           2015 TOYOTA RAV4................................................................. 46

           2016 TOYOTA RAV4................................................................. 56

           2017 TOYOTA RAV4................................................................. 60

i

2018 TOYOTA RAV4 ................................................................................ 71

    1.    Toyota's Warranty-Related Practices ........................................80

V    TOLLING OF STATUTES OF LIMITATIONS ....................................80

    Discovery Rule.................................................................................. 80

    Fraudulent Concealment ................................................................. 81

    Estoppel……….............................................................................. 81

VI    CLASS ALLEGATIONS ........................................................................82

VII    CAUSES OF ACTION ............................................................................85

    A.    Claims Brought on Behalf of the Nationwide Class, or alternatively, the Michigan State Class, the California State Class, the Texas State Class, the Florida State Class, the Illinois State Class, the New Hampshire State Class, and the Missouri State Classs ........................................................................... 85

        COUNT I:    VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C.§ 2301, *et. seq*.)............... 85

        COUNT II:    FRAUDULENT CONCEALMENT................................. 87

        COUNT III:    UNJUST ENRICHMENT ................................. 90

    B.    Claims Brought on Behalf of the Michigan Class ............................... 92

        COUNT IV:    VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (Mich. Comp. Laws § 445.901, et seq.)................................................................. 92

        COUNT V:    BREACH OF EXPRESS WARRANTY (Mich. Comp. Laws § 440.2313)................................. 93

        COUNT VI:    BEACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Mich. Comp. Laws § 440.2314). ................................................................. 94

    C.    Claims Brought on Behalf of the California Class ............................... 95

        COUNT VII:    VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, et seq.)................................................................. 95

        COUNT VIII:    VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, et seq.)................................................................. 97

        COUNT IX:    VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500, et seq.) ............. 99

COUNT X:     BREACH OF EXPRESS WARRANTY (Based on
California Law)..............................................................101

COUNT XI:    BREACH OF IMPLIED WARRANTY (Based on
California Law)..............................................................102

COUNT XII:   COMMON LAW FRAUDULENT CONCEALMENT
(Based on California Law)............................................104

COUNT XIII:  VIOLATIONS OF THE SONG-BEVERLY ACT –
BREACH OF IMPLIED WARRANTY (Cal. Civ. Code §§
1792, 1791.1, et seq.))...................................................104

D.    Claims Brought on Behalf of the Texas Class ..................................106

COUNT XIV:   VIOLATIONS OF THE DECEPTIVE TRADE
PRACTICES ACT – CONSUMER PROTECTION ACT
(Tex. Bus. & Com. Code §§ 17.41, et seq.)....................106

COUNT XV:    BREACH OF IMPLIED WARRANTY (Tex. Bus. & Com.
Code § 2.314)................................................................109

COUNT XVI:   BREACH OF EXPRESS WARRANTIES (Tex. Bus. &
Com. Code § 2.313).......................................................111

COUNT XVII   FRAUD BY CONCEALMENT (Based on Texas Law)114

COUNT XVIII  UNJUST ENRICHMENT (Based on Texas Law)........116

E.    Claims Brought on Behalf of the Florida Class .................................117

COUNT XIX:   VIOLATION OF THE FLORIDA DECEPTIVE AND
UNFAIR TRADE PRACTICES ACT (Fla. Stat. § 501.201,
et seq.)...........................................................................117

COUNT XX:    BREACH OF EXPRESS WARRANTY (Fla. Stat. §§
672.313 and 680.21) ......................................................119

COUNT XXI:   BREACH OF IMPLIED WARRANTY ON
MERCHANTABILITY (F.S.A. §§ 672.314 AND 680.12)
.......................................................................................121

F.    Claims Brought on Behalf of the Illinois Class .................................124

COUNT XXII   VIOLATION OF ILLINOIS CONSUMER FRAUD AND
DECEPTIVE PRACTICES ACT ("CFA") (815 Ill. Comp.
Stat. 505/1, et seq.).......................................................124

COUNT XXIII  BREACH OF EXPRESS WARRANTY (810 Ill. Comp.
Stat. 5/2-313)................................................................126

COUNT XXIV  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (810 Ill. Comp. Stat. 5/2-314) .128

G.    Claims Brought on Behalf of the New Hampshire Class ................................... 131

COUNT XXV VIOLATION OF NEW HAMPSHIRE CONSUMER
PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1,
*et seq.*) ............................................................................. 131

COUNT XXVI BREACH OF EXPRESS WARRANTY (N.H. REV.
STAT. §§ 382-A:2-313 AND 382-A:2A-210) ............... 133

COUNT XXVII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.H. Rev. Stat. §§ 382-A:2-314
and 382-A:2A212) .......................................................... 135

H.    Claims Brought on Behalf of the Missouri Class ............................................... 138

COUNT XXVIII VIOLATION OF MISSOURI MERCHANDISING
PRACTICES ACT (MO. REV. STAT. §§ 407.010, *et seq.*)
.......................................................................................... 138

COUNT XXIX BREACH OF EXPRESS WARRANTY (MO. REV.
STAT. §§400.2-313) ........................................................ 140

COUNT XXX BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Mo. Rev. Stat. § 400.2-314(2)(c)
.......................................................................................... 142

PRAYER FOR RELIEF .............................................................................................144

JURY DEMAND .........................................................................................................145

Plaintiffs Juliet Murphy, Ranay Flowers, Penni Lavoot, Paola Guevara, Lee Krukowski, Pamela Woodman, and Kris Huchteman, on behalf of themselves and a class of other similarly situated individuals, complain of and allege the following causes of action against Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., and Toyota Motor Engineering & Manufacturing North America, Inc., (collectively with Toyota Motor Corporation, "Toyota"), and Plaintiff Flowers, on behalf of herself and a class of other similarly situated individuals, complains of and alleges the following causes of action against Defendant Toyota Motor Corporation, as follows:

## I       INTRODUCTION

1.      This Complaint seeks damages against Toyota for breach of the manufacturer's warranty and for unfair or deceptive acts or practices pertaining to its design and manufacture of 2013-2018 Toyota RAV4 vehicles (the "Class Vehicles").

2.      Plaintiffs are informed and believe, and thereon allege, that Toyota manufactures and sells the Class Vehicles throughout the United States, including within the State of Texas.

3.      The Class Vehicles contain a significant design and/or manufacturing defect in the 12-volt battery B+ terminal, which shorts to the battery hold down frame (the "Battery Defect"). When this short occurs, it can cause a catastrophic failure of the battery, leading the automobile to lose electrical power, vehicle stalling, and potentially a fire originating in the engine compartment. Plaintiffs are informed and believe, and thereon allege, that Toyota defectively designed and/or manufactured these defective battery/charging systems and incorporated them into the Class Vehicles designed and/or manufactured by Defendants. Plaintiffs are informed and believe, and thereon allege, that the Battery Defect directly affects Plaintiffs' use, enjoyment, safety, and value of the Class Vehicles.

4.      The Battery Defect poses an obvious and material safety risk to the operators and passengers of all Class Vehicles. The dangers of a battery that can short out, causing the loss of electrical power, stalling, or fire—even while the automobile is in operation—are manifest, including increased risk of injury or death. As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced the Battery Defect.

5.      For years, Toyota has concealed the Battery Defect from owners and lessees of the Class Vehicles, withholding its knowledge because once known to those owners, the Battery Defect would diminish the Class Vehicles' intrinsic and resale value and cause Toyota automobile owners to demand immediate and costly repairs.

6.      The Battery Defect not only threatens every passenger in a Class Vehicle, it also materially undermines the Class Vehicles' intrinsic value. Plaintiffs and other Toyota automobile owners and/or lessees would have been less likely to purchase and/or lease their vehicles had they known about the Battery Defect prior to their purchase or lease, or they would have paid substantially less for them.

7.      Because of Toyota's unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. Toyota further conducted the unfair and deceptive trade practices described herein in a manner giving rise to substantial aggravating circumstances.

8.      As a result of the Battery Defect, Plaintiffs and the Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct.

9.      Accordingly, Plaintiffs bring this action to redress Toyota's violations of the consumer protection statutes, and also seek recovery for Toyota's breaches of express warranty,

implied warranty, its duty of good faith and fair dealing, and its fraudulent omissions and concealment of the Battery Defect.

## II    JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and one defendant are citizens of different States. Alternatively, this court has federal question subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, based on Plaintiffs' allegations that Toyota has violated The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court has specific personal jurisdiction over Toyota because Toyota's United States headquarters is located in this district. Toyota also conducts business in Texas, has purposefully availed themselves of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully placing Class Vehicles into the stream of commerce within the districts of Texas and throughout the United States with the expectation and intent that consumers would purchase them. Thousands of Class Vehicles have been sold in Texas and are operated within the State and this judicial district.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Toyota has its United States headquarters in this district, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, there are one or more authorized Toyota dealers within this district, Toyota has

advertised in this district, and Toyota has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial and material part of the events and/or omissions giving rise to the claims occurred within this district.

### III    PARTIES

#### A.    Plaintiffs

**1.    Michigan Plaintiff Juliet Murphy**

13.    Plaintiff Juliet Murphy is a resident of Oxford, Michigan, and citizen of the State of Michigan.

14.    In or about July 2015, Plaintiff Murphy leased a new 2015 Toyota RAV4 (for the purposes of this section "the Vehicle") from Suburban Toyota in Troy, Michigan.

15.    Plaintiff Murphy uses the Vehicle for personal, family, and/or household uses.

16.    At the time she leased the vehicle, Plaintiff was not informed of the Battery Defect or the risk of catastrophic failure of the battery, leading the automobile to loss of electrical power, vehicle stalling, and potentially fire originating in the engine compartment.

17.    In or about July 2018, at the expiration of the lease period, Plaintiff Murphy purchased the Vehicle.

18.    In or before February 2020, Plaintiff Murphy had her vehicle serviced at Suburban Toyota, an authorized Toyota dealership. Shortly thereafter, Plaintiff Murphy experienced excessive corrosion around the vehicle's battery and battery terminals that interfered with the operation of the vehicle requiring Plaintiff Murphy to have the battery replaced. At no time prior to the replacement of the battery, which was performed at Plaintiff's expense, had Toyota informed Plaintiff of the risk of catastrophic failure of the battery, leading the automobile to loss of electrical power, vehicle stalling, and potentially fire originating in the engine compartment, in her vehicle.

19.     The Vehicle has not been recalled. Plaintiff Murphy is concerned and fearful regarding the integrity and safety of the battery system of the Vehicle.

20.     Had Plaintiff Murphy known of the Battery Defect at the time she leased, and later purchased, the Vehicle she would not have leased or purchased it or would have paid substantially less for it.

21.     Plaintiff Murphy has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Battery Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**2.      California Plaintiff Penni Lavoot**

22.     Plaintiff Penni Lavoot is a resident of La Habra, California, and citizen of the State of California.

23.     In or about October 2017, Plaintiff Lavoot purchased a new 2018 Toyota RAV4 (for the purposes of this section "the Vehicle") from Norwalk Toyota in Norwalk, California.

24.     Plaintiff uses the Vehicle for personal, family, and/or household uses.

25.     Prior to purchasing the Vehicle, Plaintiff reviewed the sticker Toyota placed on the window, Toyota's vehicle manual, and other advertising and marketing material regarding the vehicle. Those materials advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details, and crash test ratings) and Plaintiff relied on them when deciding to purchase the Vehicle. Those materials did not disclose that the Vehicle possessed any defects.

26.     At the time she purchased the vehicle, Plaintiff was not informed of the Battery Defect or the risk of catastrophic failure of the battery, leading the automobile to loss of electrical power, vehicle stalling, and potentially fire originating in the engine compartment.

27.     The Vehicle has not been recalled. Plaintiff is concerned and fearful regarding the integrity and safety of the battery system of the Vehicle.

28.     Had Plaintiff known of the Battery Defect at the time she purchased the Vehicle she would not have leased or purchased it or would have paid substantially less for it.

29.     Plaintiff has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Battery Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**3.     Texas Plaintiff Ranay Flowers**

30.     Plaintiff Ranay Flowers is a resident of Rockport, Texas, and a citizen of the State of Texas.

31.     In or about May 2020, Plaintiff Flowers purchased a used 2017 Toyota RAV4 (for the purposes of this section "the Vehicle") from Mike Shaw Toyota in Corpus Christi, Texas.

32.     Plaintiff uses the Vehicle for personal, family, and/or household uses.

33.     Prior to purchasing the Vehicle, Plaintiff reviewed the sticker Toyota placed on the window, Toyota's vehicle manual, and other advertising and marketing material regarding the vehicle. Those materials advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on them when deciding to purchase the Vehicle. Those materials did not disclose that the Vehicle possessed any defects.

34.     At the time she purchased the vehicle, Plaintiff was not informed of the Battery Defect or the risk of catastrophic failure of the battery, leading the automobile to loss of electrical power, vehicle stalling, and potentially fire originating in the engine compartment.

35.     Shortly after purchase, Plaintiff's vehicle began exhibiting numerous problems. In September 2020, she had her vehicle serviced at Mike Shaw Toyota, an authorized Toyota dealership to deal with flickering displays in her vehicle. At no time prior to this repair had Toyota informed Plaintiff of the risk of catastrophic failure of the battery, leading the automobile to loss of electrical power, vehicle stalling, and potentially fire originating in the engine compartment, in her vehicle.

36.     Plaintiff's vehicle continued experiencing issues related to its electrical system. In April 2021, she again had her vehicle serviced at Mike Shaw Toyota to deal with issues related to the battery and engine of her vehicle. Once again, Toyota never her informed her of the serious risks associated with Battery Defect nor that the Battery Defect existed.

37.     The Vehicle has not been recalled. Plaintiff is concerned and fearful regarding the integrity and safety of the battery system of the Vehicle.

38.     Had Plaintiff known of the Battery Defect at the time she purchased the Vehicle she would not have leased or purchased it or would have paid substantially less for it.

39.     Plaintiff has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Battery Defect and Toyota's refusal to correct the defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### 4.    Florida Plaintiff Paola Guevara

40.    Plaintiff Paola Guevara is Florida citizen who lives in Orlando, located in Orange County, Florida.

41.    On or about March 19, 2021, Plaintiff Guevara purchased a certified pre-owned 2018 Toyota Rav4 equipped with the 12V Battery from Winter Park Toyota AutoNation, an authorized Toyota dealership located in Winter Park, Florida. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Toyota.

42.    Plaintiff Guevara purchased her vehicle for approximately $20,508.00. Passenger safety and reliability were important factors in Plaintiff Guevara's decision to purchase his vehicle.

43.    Before purchasing her 2018 Toyota RAV4, Plaintiff Guevara researched the vehicle.  Plaintiff Guevara believed that the Toyota RAV4 would be a safe and reliable vehicle.

44.    At the time of Plaintiff Guevara's purchase, Toyota knew that its RAV4 12V batteries were defective, but the Toyota sales representative did not disclose the Battery Defect to Plaintiff Guevara when discussing the features, components, and performance of the Vehicle prior to purchase. In reliance on these material omissions and misrepresentations, Plaintiff Guevara purchased – then operated the Vehicle on the reasonable but incorrect belief that the Vehicle's battery would operate properly as warranted. Had Plaintiff Guevara been informed of the Battery Defect prior to or at the time of purchase, he would not have purchased the Vehicle or else would have paid significantly less for the Vehicle.

45.    On or above May 5, 2021, Plaintiff Guevara was driving her vehicle when the vehicle experienced a sudden loss of power. Plaintiff Guevara coasted the vehicle to the side of the road and exited the vehicle. Upon exiting, Plaintiff Guevara noticed smoke, sparks, and flames coming from her vehicle. She immediately called 911 and the City of Orland Fire Department

responded to her call and extinguished her vehicle. As a result of the fire, Plaintiff Guevara's vehicle is complete inoperable. Plaintiff Guevara has spent approximately $2,000.00 as a result of the Battery Defect.

46.     Neither Toyota nor any of its agents, dealers, or representatives informed Plaintiff Guevara of the Battery Defect prior to her purchase of the Vehicle.

47.     Had Plaintiff Guevara been advised of the Battery Defect at or before the point of sale, she would not have purchased her Vehicle or else would have paid significantly less for the Vehicle. Plaintiff Guevara did not receive the benefit of her bargain.

48.     Plaintiff Guevara might purchase or lease a Class Vehicle in the future, despite the fact it was once marred by false advertising or labeling, as Plaintiff Guevara may reasonably, but incorrectly, assume the Class Vehicles' Battery Defect was remedied or improved. At all times, Plaintiff Guevara, like all Class Members, has attempted to drive her Toyota RAV4 in a manner that is and was both foreseeable, and in which it was intended to be used.

**5.     Illinois Plaintiff Lee Krukowski**

49.     Plaintiff Lee Krukowski is an Illinois citizen who lives in Yorkville, located in Kendall County, Illinois.

50.     On or about April 18, 2019, Plaintiff Krukowski purchased a certified pre-owned 2018 Toyota RAV4 equipped with the 12V Battery from Grossinger City Toyota, an authorized Toyota dealership located in Chicago, Illinois. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Toyota.

51.     Plaintiff Krukowski purchased his vehicle for approximately $21,415.00.

52.     Passenger safety and reliability were important factors in Plaintiff Krukowski's decision to purchase his vehicle. Before purchasing his 2018 Toyota RAV4, Plaintiff Krukowski

researched the vehicle. Plaintiff Krukowski believed that the Toyota RAV4 would be a safe and reliable vehicle.

53.     At the time of Plaintiff Krukowski's purchase, Toyota knew that its RAV4 12V batteries were defective, but the Toyota sales representative did not disclose the Battery Defect to Plaintiff Krukowski when discussing the features, components, and performance of the Vehicle prior to purchase. In reliance on these material omissions and misrepresentations, Plaintiff Krukowski purchased – then operated the Vehicle on the reasonable but incorrect belief that the Vehicle's battery would operate properly as warranted. Had Plaintiff Krukowski been informed of the Battery Defect prior to or at the time of purchase, he would not have purchased the Vehicle or else would have paid significantly less for the Vehicle.

54.     In February 2021, Plaintiff Krukowski began to notice a burning smell in his garage after returning from a trip in his Vehicle.

55.     Neither Toyota nor any of its agents, dealers, or representatives informed Plaintiff Krukowski of the Battery Defect prior to his purchase of the Vehicle.

56.     Had Plaintiff Krukowski been advised of the Battery Defect at or before the point of sale, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle. Plaintiff Krukowski did not receive the benefit of his bargain.

57.     Plaintiff Krukowski might purchase or lease a Class Vehicle in the future, despite the fact it was once marred by false advertising or labeling, as Plaintiff Krukowski may reasonably, but incorrectly, assume the Class Vehicles' Battery Defect was remedied or improved. At all times, Plaintiff Krukowski, like all Class Members, has attempted to drive his Toyota RAV4 in a manner that is and was both foreseeable, and in which it was intended to be used.

### 6.    New Hampshire Plaintiff Pamela Woodman

58.    Plaintiff Pamela Woodman is a New Hampshire citizen who lives in Dover, located in Strafford County, New Hampshire.

59.    On or about January 2018, Plaintiff Woodman purchased a new 2018 Toyota RAV4 equipped with the 12V Battery from Bill Dube, Inc., an authorized Toyota dealership located in Dover, New Hampshire. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Toyota.

60.    Plaintiff Woodman purchased her vehicle for approximately $27,300.00.

61.    Passenger safety and reliability were important factors in Plaintiff Woodman's decision to purchase her vehicle. Before purchasing her 2018 Toyota RAV4, Plaintiff Woodman researched the vehicle. Plaintiff Woodman believed that the Toyota RAV4 would be a safe and reliable vehicle.

62.    At the time of Plaintiff Woodman's purchase, Toyota knew that its RAV4 12V batteries were defective, but the Toyota sales representative did not disclose the Battery Defect to Plaintiff Woodman when discussing the features, components, and performance of the Vehicle prior to purchase. In reliance on these material omissions and misrepresentations, Plaintiff Woodman purchased – then operated the Vehicle on the reasonable but incorrect belief that the Vehicle's battery would operate properly as warranted. Had Plaintiff Woodman been informed of the Battery Defect prior to or at the time of purchase, she would not have purchased the Vehicle or else would have paid significantly less for the Vehicle.

63.    On or about May 12, 2020, Plaintiff Woodman was driving the vehicle when she began to smell a burning rubber odor. As she pulled over the side of the road, Plaintiff Woodman saw flames coming from the center console.  She stopped the vehicle and exited quickly, before

the vehicle burned to its frame, including all possessions inside the vehicle. As a result of the fire, Plaintiff Woodman's vehicle is completely inoperable. Plaintiff Woodman has spent approximately $10,000.00 as a result of the Battery Defect.

64.     Neither Toyota nor any of its agents, dealers, or representatives informed Plaintiff Woodman of the Battery Defect prior to her purchase of the Vehicle.

65.     Had Plaintiff Woodman been advised of the Battery Defect at or before the point of sale, she would not have purchased her Vehicle or else would have paid significantly less for the Vehicle. Plaintiff Woodman did not receive the benefit of her bargain.

66.     Plaintiff Woodman might purchase or lease a Class Vehicle in the future, despite the fact it was once marred by false advertising or labeling, as Plaintiff Woodman may reasonably, but incorrectly, assume the Class Vehicles' Battery Defect was remedied or improved. At all times, Plaintiff Woodman, like all Class Members, has attempted to drive her Toyota RAV4 in a manner that is and was both foreseeable, and in which it was intended to be used.

### 7.     Missouri Plaintiff Kris Huchteman

67.     Plaintiff Kris Huchteman is a Missouri citizen who lives in Bolivar, located in Polk County, Missouri.

68.     On or about June 17, 2017, Plaintiff Huchteman purchased a new 2017 Toyota RAV4 equipped with the 12V Battery from Joe Machens Toyota, an authorized Toyota dealership located in Columbia, Missouri. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Toyota.

69.     Plaintiff Huchteman purchased her vehicle for approximately $32,809.00.

70.     Passenger safety and reliability were important factors in Plaintiff Huchteman's decision to purchase her vehicle. Before purchasing her 2017 Toyota RAV4, Plaintiff Huchteman

researched the vehicle.  Plaintiff Huchteman believed that the Toyota RAV4 would be a safe and reliable vehicle.

71.     At the time of Plaintiff Huchteman's purchase, Toyota knew that its RAV4 12V batteries were defective, but the Toyota sales representative did not disclose the Battery Defect to Plaintiff Huchteman when discussing the features, components, and performance of the Vehicle prior to purchase. In reliance on these material omissions and misrepresentations, Plaintiff Huchteman purchased – then operated the Vehicle on the reasonable but incorrect belief that the Vehicle's battery would operate properly as warranted. Had Plaintiff Huchteman been informed of the Battery Defect prior to or at the time of purchase, she would not have purchased the Vehicle or else would have paid significantly less for the Vehicle.

72.     On or about July 16, 2020, Plaintiff Huchteman's spouse, Sarah Huchteman, was driving the vehicle when she began to notice smoke coming from the vehicle. Mrs. Huchteman immediately pulled the vehicle over to the side of the road and exited the vehicle before it began to catch fire. Although the fire department was able to extinguish the vehicle, it was deemed a complete loss. Plaintiff Huchteman has spent approximately $6,000.00 as a result of the Battery Defect.

73.     Neither Toyota nor any of its agents, dealers, or representatives informed Plaintiff Huchteman of the Battery Defect prior to his purchase of the Vehicle.

74.     Had Plaintiff Huchteman been advised of the Battery Defect at or before the point of sale, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle. Plaintiff Huchteman did not receive the benefit of his bargain.

75.     Plaintiff Huchteman might purchase or lease a Class Vehicle in the future, despite the fact it was once marred by false advertising or labeling, as Plaintiff Huchteman may

- 13 -

reasonably, but incorrectly, assume the Class Vehicles' Battery Defect was remedied or improved.

At all times, Plaintiff Huchteman, like all Class Members, has attempted to drive her Toyota RAV4

in a manner that is and was both foreseeable, and in which it was intended to be used.

## B.    Defendants[1]

### 1.    Toyota Motor Corporation

76.    Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation with its

principal place of business located at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-8571,

Japan. TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc. TMC, through its various

entities, designs, manufactures, markets, distributes, and sells Toyota, Lexus, and Scion

automobiles in California and multiple other locations in the United States and worldwide.

### 2.    Toyota Motor Sales, U.S.A., Inc.

77.    Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and

headquartered in Plano, Texas. TMS is TMC's U.S. sales and marketing arm, which oversees sales

and other operations in 49 states. TMS distributes Toyota, Lexus, and Scion vehicles in the United

States and sells these vehicles through its network of dealers. Money received from the purchase

of a Toyota vehicle from a dealer flows from the dealer to TMS. Money received by the dealer

from a purchaser can be traced to TMS and TMC.

### 3.    Toyota Motor North America, Inc.

78.    Defendant Toyota Motor North America, Inc. ("TMNA") is a California

corporation headquartered in Plano, Texas as of May 2017. TMNA operates as a wholly owned

subsidiary of TMC, the Japanese parent company, and is the corporate parent of TMS. TMNA

---

[1] In compliance with the Court's order dismissing all fictitious parties without prejudice from *Murphy v. Toyota Motor Corp.*, (ECF No. 29), Plaintiffs do not name any "Doe" defendants in this Complaint.

oversees government and regulatory affairs, energy, economic research, philanthropy, corporate advertising, and corporate communications for all of TMC's North American operations.

### 4.    Toyota Engineering & Manufacturing North America, Inc.

79.    Defendant Toyota Engineering & Manufacturing North America, Inc. ("TEMA") is a Kentucky corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024.

80.    TEMA is responsible for automobile engineering, manufacturing, research, and design in North America for Toyota motor vehicles. TEMA designs, develops, tests, manufactures, assembles, and evaluates Toyota motor vehicles in the United States. TEMA also develops parts for North American Toyota vehicles. TEMA operates factories which manufacture Toyota vehicles and operates research and development facilities.

81.    TMS, TMC, TMNA, and TEMA are collectively referred to in this complaint as "Toyota" or the "Defendants," unless identified as TMS, TMC, TMNA or TEMA.

82.    At all times herein mentioned, the Toyota Defendants designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the Class Vehicles, including the vehicles operated by Plaintiffs.

83.    There exists, and at all times herein mentioned existed, a unity of ownership between TMS, TMC, TMNA, and TEMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants would, under the circumstances set forth in this complaint, sanction fraud, or promote injustice.

- 15 -

84.     For example, upon information and belief, Defendants TMS, TMNA, and TEMA communicate with TMC concerning virtually all aspects of the Toyota products TMS, TMNA, and TEMA distribute within the United States, including appropriate repairs for pervasive defects, and whether Toyota will cover repairs to parts customers claim to be defective. Toyota's decision not to disclose the alleged defects to Plaintiffs or the Class, or whether to cover repairs to the same pursuant to an extended warranty or goodwill program, was a decision made jointly by TMC, TMS, and TMNA.

85.     TMS also oversees Toyota's National Warranty Operations (NWO), which, among other things, reviews and analyzes warranty data submitted by Toyota's dealerships and authorized technicians in order to identify defect trends in vehicles. Upon information and belief, Toyota dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendants decide to audit the dealership. NWO collects this information, makes it available to other Toyota divisions, and assists Toyota in determining whether particular repairs are covered by an applicable Toyota warranty or are indicative of a pervasive defect.

86.     Toyota also jointly designs, determines the substance of, and affixes to its vehicles the window stickers visible on each new Toyota vehicle that is offered for sale at its authorized dealerships, including those omitting mention of the alleged defects. Plaintiffs and the Class reviewed these stickers prior to purchasing or leasing Class Vehicles. Toyota controls the content of these window stickers; its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Toyota are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of

1958, 15 U.S.C. §§ 1231-1233, *et seq.* The Act specifically prohibits the removal or alteration of the sticker prior to the sale of the car by anyone other than the ultimate purchaser, including the dealership at which the vehicle is offered for sale.

87.     Toyota developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Battery Defect.

88.     Toyota also employs a Customer Experience Center, the representatives of which are responsible for fielding customer complaints and monitoring customer complaints posted to Toyota or third-party web sites: data which informs NWO's operations, and through which Toyota acquires knowledge of defect trends in its vehicles.

89.     Toyota manufactured, sold, and warranted the Class Vehicles throughout the United States. Toyota and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective battery/charging system in the Class Vehicles.

90.     Toyota distributes vehicles, including the Class Vehicles, through a network of dealers who are agents of TMS and TMC.

91.     Toyota manufactured, sold, and warranted the Class Vehicles throughout the United States. Toyota and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective battery/charging system in the Class Vehicles.

92.     Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other

Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

**IV      FACTUAL ALLEGATIONS**

**A.      <u>The Nature of the Battery Defect</u>**

93.      A typical 12V car battery is contained in a plastic case that holds all of the internal components in place. The top of the battery is a plastic lid that has a positive and negative terminal made of lead. These are called terminal posts.

94.      The battery casing is divided into six separate chambers separated by a plastic wall. Each chamber is known as a cell. A 12V battery consists of six individual cells that generate around 2 volts. Each cell is connected to the positive of the next cell via two lead plate straps to give a total voltage of around 12V.

95.      The battery uses a lead-acid chemical reaction. Each cell consists of two plates, one made from lead and the other from lead dioxide. The plates are submerged in sulfuric acid, which acts as a catalyst and triggers a chemical reaction between them. This reaction produces electrons, which generate electricity. The electricity is then released through the positive terminal and returned to the negative terminal.

96.      When the driver switches the vehicle ignition on, it sends a signal to the battery to begin the chemical reaction. The electricity produced by this reaction supplies power to the starter motor, which then turns the engine over. At the same time, the battery provides power to the spark plugs, which ignite the air and fuel mixture that is compressed in the engine combustion cylinders.

97.      The power provided by the battery is then replaced by the alternator, which supplies most of the electrical current to the electrical systems in the vehicle, as well as keeps the battery charged.

98.     In order to keep a battery secured firmly in place in the battery tray, manufacturers such as Toyota use hold down straps or frames to prolong the life of the battery.  This both minimizes excessive vibration of the battery while the vehicle is in use and prevents the battery from coming into contact with other components of the engine which could cause it to short.

99.     In this case, the Class Vehicles contain one or more design and/or manufacturing defects that cause electrical shorts when the battery's B+ terminals comes into contact with the battery hold down frame itself, making the Class Vehicles unsafe to drive.

100.    When the battery short circuits, there may be a sudden loss of electrical power, vehicle stalling, and/or a fire originating in the engine compartment.

101.    Short circuits occur when there is a fault in the wiring harness, which shunts electricity between circuits before it gets to its destination. When the hold down frame comes into contact with the B+ terminal, it causes a short circuit in that the electrical current is directed away from its intended destination.

102.    Short circuits are extremely dangerous and can damage electronic components, set the check engine light, blow fuses, drain the battery, and leave drivers stranded. Short circuits can also cause excessive heat to wiring components and can result in smoke and fire. It is common for the object which caused the external short circuit to melt or fuse to the battery due to the heat produced.

**B.      The Class Vehicles Suffer from the Battery Defect**

103.    The Class Vehicles suffer from the Battery Defect, which is a significant and material defect capable of leading to complete failure of the battery, and therefore the engine. The Battery Defect materially threatens the health and safety of drivers and passengers who ride in the Class Vehicles.

104.    Plaintiffs and numerous Class Vehicle owners and lessees have reported that the Battery Defect causes sudden loss of electrical power, vehicle stalling, and/or fires.

105.    On February 25, 2021, the National Highway Traffic Safety Administration opened a preliminary evaluation investigation into the Battery Defect. Prior to opening the investigation, NHTSA had received eleven complaints from members of the public, as well as additional "Early Warning Report" (or "EWR") data from Toyota suggesting that there is a tendency for thermal events to originate in the left side of the engine compartment of the Class Vehicles.

106.    Several of these reported thermal events have occurred during driving conditions, though four took place with the ignition off. In half of these cases, the drivers experienced stalling prior to the thermal event. Many of these incidents ultimately were identified as originating from the battery.

**C.    Toyota's Knowledge of the Battery Defect's Safety Implications**

107.    An important source of field data is NHTSA's Consumer Complaint Database. This publicly available database contains all motor vehicle-related consumer complaints submitted to NHTSA since January 2000. Consumers submit what is called a "Vehicle Owner Questionnaire" in which they are asked to provide information that includes, the make, model, and model year of the vehicle, the approximate incident date, the mileage at which the incident occurred, whether the incident involved a crash or a fire, whether any persons were injured or killed in the incident, the speed of the vehicle at the time of the incident, and a description of the incident along with a description of the vehicle components they believe were involved in the incident. The majority of consumer complaints are submitted online at www.safercar.gov where consumers can input this information directly into the database through their computer. They can also submit complaints by telephone through the Auto Safety Hotline, through submitting a paper Vehicle Owner

Questionnaire form, and by mailing consumer letters to NHTSA. This information is then entered into NHTSA's ARTEMIS database where it can be searched and reviewed by the general public and vehicle manufacturers alike, by make, model, model year, and component. NHTSA promotes this database as a valuable consumer information tool.

108.    There have been a total of 55 complaints relating to the Battery Defect submitted to NHTSA, including the 11 resulting in a fire event noted in NHTSA's Opening Resume of its Preliminary Evaluation, as well as 12 additional fire events not noted by NHTSA.

109.    The following are the consumer complaints submitted to NHTSA regarding the Battery Defect in the Class Vehicles: [2]

### 2013 TOYOTA RAV4

April 25, 2014 **NHTSA ID NUMBER: 10584988**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 10584988

**Incident Date** April 24, 2014

**Consumer Location** CARLSBAD, CA

**Vehicle Identification Number** 2T3YL4DV5DW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
WHILE I WAS DRIVING, THE CAR'S ELECTRIC SYSTEM STARTED REBOOTING ITSELF A FEW TIMES, AND THE CAR EVENTUALLY STALLED ON A BUSY STREET! THE POWER WAS COMPLETELY SHUTDOWN AND I COULDN'T EVEN TURN THE

---

[2] The following complaints are reproduced as they appear on NHTSA's website. Any typographical errors are attributable to the original author of the complaint. Emphasis added to original text is denoted by bold and underlining.

FLASH LIGHT ON. I HAD TO HAVE POLICE OFFICER COME TO THE LOCATION WHERE THE CAR STOPPED TO PROTECT OTHER DRIVERS (UNTIL A TOWING TRACK ARRIVED). THIS INCIDENT APPENDED ON 4/24/12 ON EASTBOUND CARMEL VALLEY ROAD RIGHT BEFORE THE INTERSECTION WITH EL CAMINO REAL. I HAD A SIMILAR ISSUE WITH THE ELECTRIC SYSTEM TWO MONTHS PRIOR, AND HAD A TOYOTA DEALER LOOK AT THE ISSUE. HOWEVER, THEY COULDN'T IDENTIFY THE ROOT CAUSE AND SIMPLY UPDATED THE SYSTEM SOFTWARE. AS OF TODAY, 4/25/14, THE CAR IS STILL AT A TOYOTA DEALER AND BEING REPAIRED. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

January 15, 2015 **NHTSA ID NUMBER: 10672812**

**Components: ELECTRICAL SYSTEM, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10672812

**Incident Date** January 8, 2015

**Consumer Location** SUSSEX, WI

**Vehicle Identification Number** 2T3RFREV7DW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

WHEN MAKING A LEGAL U-TURN ON A BUSY ROAD I RAPIDLY BRAKED THE CAR (FROM 45MPH TO 2-3MPH) TO A PARTIAL STOP ROLLING THROUGH THE INTERSECTION WHILE TURNING THE WHEELS TO A HARD LEFT. I PRESSED ON THE ACCELERATOR EXPECTING TO ACCELERATE OUT OF THE U-TURN AND INSTEAD THE CAR HESITATED AND SLOWED FEELING LIKE THERE WAS A MOMENTARY LOSS OF POWER TO THE WHEELS. I PRESSED HARDER ON THE ACCELERATOR WITH NO IMMEDIATE EFFECT IN ACCELERATION. APPROXIMATELY 2-3 SECONDS PASSED AS ONCOMING TRAFFIC APPROACHED IN THE LANE I WAS DRIFTING INTO WHEN SUDDENLY ALL ACCELERATION RESUMED NORMALLY. THIS INCIDENT OCCURRED JUST ONCE. ECO MODE WAS TURNED ON AND MY RAV4 IS AN AWD MODEL. I CONSIDER IT TO BE A REPORTABLE INCIDENT SINCE THE HESITATION WAS NOT EXPECTED AND INCREASED THE PROBABILITY OF COLLISION WITH TRAFFIC IN THE DRIVING LANE I WAS TURNING INTO. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

February 8, 2015 **NHTSA ID NUMBER: 10682011**

**Components: FUEL/PROPULSION SYSTEM, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10682011

**Incident Date** May 5, 2014

**Consumer Location** CADILLAC, MI

**Vehicle Identification Number** JTMBFREVXD5****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES0**

**DEATHS0**
ON RARE OCCASIONS WHEN DRIVING, I WILL SUDDENLY LOSE POWER. IT'S AS IF SOMEONE HAS SUDDENLY TURNED OFF THE IGNITION SWITCH. DEPRESSING THE GAS PEDAL WILL NOT SOLVE THE PROBLEM. THE ONLY WAY TO REGAIN POWER IS TO TAKE YOUR FOOT OFF THE GAS PEDAL AND THEN PUSH DOWN AGAIN TO REGAIN SPEED. IT CAN OCCUR AT ANY TIME ON FLAT ROADS, HILLS, SNOW OR RAIN COVERED, THERE SEEMS TO BE NO REASON FOR THIS. THE TOYOTA DEALER SAYS HE CAN'T SOLVE THE PROBLEM UNLESS I CAN DUPLICATE THE PROBLEM FOR HIM SO HE CAN SEE FOR HIMSELF WHAT IS HAPPENING & THEN SOLVE THE PROBLEM. BUT I CAN'T DUPLICATE THE PROBLEM! IT'S TOTALLY RANDOM. THIS PUTS ME LITERALLY ON PINS & NEEDLES WHEN I DRIVE BECAUSE WHAT HAPPENS IF I AM PASSING A CAR AND SUDDENLY I LOSE POWER? I HAVE 20000 MILES ON MY VEHICLE AND LOSS OF POWER HAS OCCURED MAYBE 20 TIMES. THIS IS VERY FRUSTRATING AND DANGEROUS. *JS

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

April 20, 2015 **NHTSA ID NUMBER: 10706705**

**Components: ENGINE, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10706705

**Incident Date** December 16, 2013

**Consumer Location** WESTERN SPRINGS, IL

**Vehicle Identification Number** 2T3DFREV6DW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

WITHIN THE FIRST FEW MONTHS AFTER PURCHASE THE ENGINE OF MY VEHICLE
WOULD SOMETIMES HESITATE DURING A TURN. IT FOR A MOMENT WILL LOOSE
POWER AND THEN HAVE A BURST OF ACCELERATION. IT SEEMS THAT THIS
HAPPENS MOST OFTEN AFTER IT HAS BEEN DRIVEN, THEN PARKED FOR A SHORT
TIME AND THEN STARTED AND TURNED BUT IT MAY ALSO HAVE HAPPENED AT
OTHER TIMES. IT SEEMS TO BE HAPPENING MORE OFTEN LATELY AND MAKES
TURNING DANGEROUS IF THERE IS A VEHICLE APPROACHING ACROSS THE
CURVE OF THEE TERM. I KNOW OTHERS HAVE EXPERIENCED THIS SAME
PROBLEM WITH THE 2013 RAV4. I ASKED THE DEALER'S SERVICE DEPARTMENT IF
THEN COULD FIX THE PROBLEM AND WAS TOLD NO. THIS PROBLEM IS
DANGEROUS. *TR

**1 Affected Product**

| **Vehicle** | | |
| --- | --- | --- |
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2013 |

November 16, 2015 **NHTSA ID NUMBER: 10791578**

**Components: ENGINE, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10791578

**Incident Date** November 16, 2015

**Consumer Location** MERIDIAN, ID

**Vehicle Identification Number** 2T3DFREV9DW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

ON AT LEAST 5 DIFFERENT OCCASIONS SINCE OWNING THIS TOYOTA RAV4 I
HAVE EXPERIENCED A SERIOUS ENGINE CONTROL PROBLEM. IT HAPPENS IN THE
ECONOMY MODE OF THE CAR WHICH IS THE DEFAULT MODE YOU START THE
CAR UP IN. WHAT HAPPENS IS WHEN PULLING INTO TRAFFIC AND YOU PUSH
DOWN ON THE ACCELERATOR TO GET FAST SPEED TO MERGE INTO TRAFFIC THE
ENGINE STALLS. YOU CAN HAVE THE ACCELERATOR PUSHED ALL THE WAY
DOWN AND THE ENGINE GIVES YOU NO POWER. THIS CREATES A VERY
DANGEROUS CONDITION ON THE ROAD AS MY CAR IS ACTUALLY STALLING
WHEN IT SHOULD BE ACCELERATING. I HAVE TESTED AND DONE THE SAME
THING IN THE 'SPORT MODE' OF THE VEHICLE AND IT DOES NOT CREATE THE
SAME STALL SITUATION. THUS MY CONCLUSION IS THE PROBLEM RESTS IN THE
'ECONOMY MODE'. I HAVE ASKED THE DEALER ABOUT THIS AND THEY SAY
THEY DO NOT KNOW WHY. I AM GOING BACK TOMORROW TO AS THEM TO TAKE
BACK THIS CAR, AS IT IS DANGEROUS AND IS NOT PREDICTABLE OR
DEPENDABLE IN DRIVING.

**1 Affected Product**

<table>
<tr><td colspan="3" align="center">**Vehicle**</td></tr>
<tr><td>**MAKE**</td><td>**MODEL**</td><td>**YEAR**</td></tr>
<tr><td>TOYOTA</td><td>RAV4</td><td>2013</td></tr>
</table>

December 1, 2015 **NHTSA ID NUMBER: 10807676**

**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER, STEERING**

**NHTSA ID Number:** 10807676

**Incident Date** May 30, 2015

**Consumer Location** ASHBURN, VA

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
MANUFACTURER: TOYOTA MOTOR CORPORATION

VEHICLE IDENTIFICATION NO. (VIN): XXXXXXX.

BOUGHT A TOYOTA CERTIFIED AT DEALERSHIP, (PUSH BUTTON) HOWEVER IN SIX OCCASIONS, CAR ENGINE WOULD NOT TURN ON. INDICATOR LIGHT FOR STEERING WAS ON. AFTER SEVERAL TRIES, AND ONCE I PULLED THE STEERING HARD THEN CAR STARTED FINE. TOOK CAR TO DEALER TO CHECK IT, THEY SAID NOTHING WAS WRONG WITH CAR. THE LAST TIME, THE CAR DID NOT START EVEN WITH THE TOYOTA ROAD ASSISTANCE STAFF/TOWING, WAS UNABLE TO GET IT OUT OF GARAGE, AREA WAS TOO LOW. ENDED UP LEAVING CAR AT GARAGE OVERNIGHT. NEXT DAY, I RETURNED THE CAR, DID A TRADE IN FOR NEW TOYOTA. HOWEVER, DEALER OR TOYOTA CO. DID NOT ADMIT PROBLEMS WITH CAR. BATTERY WAS FUNCTIONING FINE AS EVERYTHING ELSE WOULD TURN ON, IE, RADIO, AC ..FAN, LIGHTS.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2013 |

January 11, 2016 **NHTSA ID NUMBER: 10819456**

**Components: SERVICE BRAKES, ELECTRICAL SYSTEM**

**NHTSA ID Number:** 10819456

**Incident Date** December 4, 2014

**Consumer Location** APO, AE

**Vehicle Identification Number** 2T3YFREV0DW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

THE "POWER BRAKE ACTUATOR" WENT OUT ON MY 2013 TOYOTA RAV-4 THREE TIMES WHILE I WAS DRIVING THE VEHICLE. EVERY TIME THIS HAPPENED, ALL OF THE WARNING LIGHTS ON THE DASH BOARD WOULD COME ON. AT THE SAME TIME ALL OF THE GAUGES INCLUDING THE SPEEDOMETER, THE VEHICLE STABILITY CONTROL, ANTI LOCK BRAKES, TRACTION CONTROL SYSTEM AND POWER STEERING WOULD ALL STOP WORKING ON THE VEHICLE. THIS WOULD MAKE IT ALMOST IMPOSSIBLE TO STOP OR CONTROL THE VEHICLE WHAT SO EVER.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

April 20, 2016 **NHTSA ID NUMBER: 10860544**

**Components: ENGINE, STRUCTURE, ELECTRICAL SYSTEM**

**NHTSA ID Number:** 10860544

**Incident Date** March 10, 2016

**Consumer Location** EAST PROVIDENCE, RI

**Vehicle Identification Number** 2T3YFREV2DW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES0**

**DEATHS0**

THE ENGINE STARTED ON FIRE UNDER NORMAL DRIVING CONDITIONS. THE CAR WAS NOT INVOLVED IN ANY ACCIDENT. THE RAV4 LIMITED WAS TOTALED. IT WAS LESS THAN 3 YEARS OLD AND HAD 17,500 MILES ON IT. THE CAR WAS SERVICED REGULARLY BY TOYOTA. THE LAST SERVICE WAS ABOUT 4 MONTHS PRIOR TO THE FIRE. TOYOTA HAS NOT HONORED THEIR 3YR/36,000 MILE WARRANTY COVERAGE ON THE CAR. TOYOTA HAS NOT OFFERED A REPLACEMENT CAR, RENTAL OR ANYTHING. EVERY TIME WE CALL OUR TOYOTA CASE MANAGER OR LEGAL DEPARTMENT MANAGERS, WE HAVE TO LEAVE A MESSAGE AND THEY NEVER RETURN OUR CALLS.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

January 4, 2017 **NHTSA ID NUMBER: 10939782**

**Components: STEERING, ENGINE, ELECTRICAL SYSTEM**

**NHTSA ID Number:** 10939782

**Incident Date** January 4, 2017

**Consumer Location** REDONDO BEACH, CA

**Vehicle Identification Number** 2T3YFREV6DW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

WHILE STOPPED AT A TRAFFIC LIGHT WITH THE TRANSMISSION IN DRIVE, THE ENGINE SHUT OFF WITHOUT WARNING, AND THE STEERING WHEEL LOCKED. THE RADIO AND HEADLIGHTS REMAINED ON. THIS THE SECOND OCCURRENCE WITHIN 6 WEEKS.

**1 Affected Product**

### Vehicle

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2013 |

October 26, 2019 **NHTSA ID NUMBER: 11271217**

**Components: UNKNOWN OR OTHER**

**NHTSA ID Number:** 11271217

**Incident Date** September 25, 2019

**Consumer Location** FORT GRATIOT, MI

**Vehicle Identification Number** 2T3BFREVXDW****

**Summary of Complaint**

**CRASHNo**

**FIREYes**

**INJURIES0**

**DEATHS0**

WHILE DRIVING THE VEHICLE ON A CITY STREET, ALL THE LIGHTS ON THE DASHBOARD FLASHED ON, THEN OFF. VEHICLE IMMEDIATELY LOST ALL ENGINE AND ELECTRICAL POWER. I WAS ABLE TO DRIVE THE VEHICLE OFF THE ROAD AND ON TO A PARKING LOT. THINKING THAT A BATTERY CABLE POSSIBLY HAD COME LOOSE, I RAISED THE HOOD. THE AREA AT OR NEAR THE BATTERY WAS ON FIRE. I CALLED 9-1-1, BUT BY THE TIME THE FIRE DEPARTMENT ARRIVED, THE ENTIRE FRONT PART OF THE VEHICLE WAS IN FLAMES. THE 2013 TOYOTA

RAV4 WAS COMPLETELY DESTROYED. I WAS NOT INJURED, BUT I AM CONCERNED THAT OTHER RAV4 DRIVERS MAY NOT BE AS FORTUNATE.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

November 10, 2019 **NHTSA ID NUMBER: 11279270**

**Components: UNKNOWN OR OTHER**

**NHTSA ID Number:** 11279270

**Incident Date** November 6, 2019

**Consumer Location** ROCKVILLE, MD

**Vehicle Identification Number** JTMWFREV5DD****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0
THE CAR BURST INTO FLAMES SPONTANEOUSLY IN THE PARKING LOT. NOBODY WAS INSIDE THE CAR AT THAT TIME. IT HAPPENED A FEW MINUTES AFTER THE CAR WAS PARKED.FIREFIGHTERS PUT OUT THE FLAMES LATER. HOWEVER, THE CAR WAS COMPLETELY DESTROYED. FORTUNATELY, NOBODY WAS INJURED OR HURT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

**March 9, 2020 NHTSA ID NUMBER: 11316999**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11316999

**Incident Date** March 6, 2020

**Consumer Location** BEACHWOOD, NJ

**Vehicle Identification Number** 2T3BFREV3DW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0

I WAS DRIVING ON A LOCAL ROAD. AS I TURNED INTO THE PARKING LOT OF A STORE, THE VEHICLE SHUT OFF AND SMOKE AND FUMES BEGAN TO FILL THE CABIN. I PULLED TO THE SIDE,GOT OUT OF THE CAR, AND RAISED THE HOOD. THERE WAS A FIRE IN THE AREA OF THE BATTERY. A PERSON NEARBY NOTICED THE FIRE AND CAME TO PUT IT OUT BEFORE THE ENTIRE VEHICLE WAS ENGULFED. LOCAL POLICE AND FIRE ALSO RESPONDED.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

July 13, 2020 **NHTSA ID NUMBER: 11339049**

**Components: ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11339049

**Incident Date** July 5, 2020

**Consumer Location** PHILADELPHIA, PA

**Vehicle Identification Number** 2T3BFREV7DW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
WHILE DRIVING, THE VEHICLE STARTED TO SHUT OFF WHILE DRIVING WITH ALL LIGHTS COMING ON ON THE DASH BOARD. IT CUTS ON WHEN YOU PUT CAR BACK IN PARK THEN TURN THE KEY, BUT STILL TURNS OFF AGAIN WHEN YOU TAKE IT PAST A CERTAIN SPEED OR WHEN STOPPING TO HARD.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

October 3, 2020 **NHTSA ID NUMBER: 11362502**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11362502

**Incident Date** September 28, 2020

**Consumer Location** LINCOLN, NE

**Vehicle Identification Number** 2T3YFREV9DW****

**Summary of Complaint**

**CRASH** No

**FIRE** Yes

**INJURIES** 0

**DEATHS** 0

DROVE THE CAR 8 BLOCKS ON CITY STREET TO THE FILLING STATION, WHILE
TURNING INTO THE FILLING STATION FROM ACCESS ROAD THE CAR SHUT OFF
AND THE DASH WENT COMPLETELY BLACK JUST SHORT OF FUEL PUMP.
STOPPED THE CAR AND RESTARTED, DROVE 50 FT. TO FUEL PUMP. SHUT CAR OFF
TO FILL WITH GAS. WENT INTO STATION TO PRE-PAY FOR FUEL. RETURNED TO
THE CAR, FILLED WITH FUEL AND TRIED TO START. WHEN TRYING TO START
THE CAR IT WAS COMPLETELY BLACK, NO ELECTRONICS AT ALL, CALLED MY
WIFE TO GET A TOW TRUCK TO HAVE IT REMOVED FROM THE GAS STATION,
THEN WENT IN TO STATION TO TELL ATTENDANT THE SITUATION. WHILE
EXITING THE STORE I NOTICED SPARKS AND GLOWING EMBERS DROPPING TO
THE GROUND FROM INSIDE THE LEFT FRONT WHEEL AREA. I TURNED BACK AND
ASKED THE STATION ATTENDANT FOR A FIRE EXTINGUISHER, RETURNED TO
CAR, WITH 5 LB EXTINGUISHER, HOOD WOULD NOT RELEASE SO SPRAYED
EXTINGUISHER UP UNDER WHEEL, AROUND HOOD CRACKS, AND BY THIS TIME
THE HEAD LIGHT HAD A HOLE WHERE THE FLAMES WERE SHOOTING OUT, SO
SPRAYED FIRE REPELLENT INTO THE HOLE. AFTER ABOUT 10 SEC EXTINGUISHER

- 34 -

WAS EMPTY. TOLD GAS STATION ATTENDANT TO CALL FIRE DEPARTMENT AS THE VEHICLE WAS GOING UP IN FLAMES. APPROXIMATELY 5 MINUTES LATER THE FIRE DEPARTMENT ARRIVED TO EXTINGUISH THE FLAMES.

**1 Affected Product**

### Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2013 |

November 29, 2020 **NHTSA ID NUMBER: 11376968**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11376968

**Incident Date** November 21, 2020

**Consumer Location** WYLIE, TX

**Vehicle Identification Number** 2T3YL4DV8DW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

AFTER NOT HAVING USED THE CAR FOR A WHILE, I DECIDED TO SEE IF THINGS WERE GOOD. I COULDN'T TURN THE CAR AT ALL, SO I DECIDED TO JUMP START IT. THE CAR TURNED ON BUT THERE WAS A WARNING SAYING "PROBLEM WITH EV SYSTEM, TAKE TO DEALERSHIP". ON MY WAY TO THE DEALERSHIP, I FELT THE ACCELERATION OF THE CAR HAD BEEN REDUCED SIGNIFICANTLY. WHEN I ARRIVE AT THE DEALERSHIP, THEY SAY LEAVE YOUR CAR HERE AND WE TAKE A LOOK AT IT. I LEFT IT THERE AND START TO HEAD BACK HOME. AS I AM GOING BACK, THE DEALERSHIP CONTACTS ME AND SAYS "WE CAN'T WORK ON THIS CAR BECAUSE WE DON'T HAVE ANYONE WHO IS EXPERIENCED WITH THIS. COME BACK AND PICK IT UP." SO I HEAD BACK TO THE DEALERSHIP. ON THE

PHONE, I MADE SURE THEY KNEW IT WAS A FULLY ELECTRIC CAR AND THEY SAID WE WOULD TAKE A LOOK AT IT. ANYWAYS, AS I AM DRIVING BACK HOME, THE ACCELERATION IS STILL VERY POOR. IT TAKES 30 SECONDS TO GO FROM 0 TO 40MPH. I GET A DIFFERENT WARNING SAYING "BATTERY OVERHEATED, LIMITING ENERGY SUPPLY". THERE ALSO IS THIS NASTY ROTTEN EGG TYPE SMELL AS WELL. I AM KIND OF SCARED NOW BECAUSE BATTERY POWERED CAR HAVE BEEN KNOWN TO CATCH ON FIRE. SO FAR NO ONE HAS BEEN ABLE TO HELP ME WITH THIS ISSUE.

December 7, 2020 **NHTSA ID NUMBER: 11378273**

**Components: UNKNOWN OR OTHER**

**NHTSA ID Number:** 11378273

**Incident Date** December 1, 2020

**Consumer Location** Unknown

**Vehicle Identification Number** 2T3DFREV5DW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0
VEHICLE WAS PARKED IN PARKING LOT, IGNITION TURNED OFF. LEFT CAR FOR APPROXIMATELY 1-2 MINUTES, RETURNED TO PARKING LOT TO FIND VEHICLE HAD CAUGHT FIRE. FIRE APPEARED TO ORIGINATE IN FRONT OF VEHICLE. FIRE DEPARTMENT WAS CALLED AND FIRE EXTINGUISHED. MOST OF DAMAGE DONE TO FRONT OF VEHICLE AND PASSENGER COMPARTMENT. VEHICLE DESTROYED.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2013 |

## 2014 TOYOTA RAV4

November 5, 2014 **NHTSA ID NUMBER: 10652907**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 10652907

**Incident Date** August 11, 2014

**Consumer Location** MARIETTA, GA

**Vehicle Identification Number** 2T3YFREV4EW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

NEW RAV-4 WAS SLIGHTLY MORE THAN 1 MONTH OLD (7/1/14 TO 8/11/14). WE WERE DRIVING BACK TO ATLANTA FROM VACATION IN THE OUTER BANKS, WE WERE USING CRUISE CONTROL TO MAINTAIN SPEED ON THE EXPRESSWAY. WE CAME ACROSS A SLOWER MOVING TRUCK AND PULLED INTO THE PASSING LANE, STILL USING CRUISE CONTROL. WHILE PASSING SLOW TRUCK, ANOTHER TRUCK CAME UP ON OUR TAIL AT A HIGHER RATE OF SPEED. I STEPPED ON THE GAS TO GET IN FRONT OF THE SLOW TRUCK, INTENDING TO ENABLE THE FAST

TRUCK TO PASS US ONCE WE WERE IN FRONT OF THE SLOW TRUCK AND BACK IN THE NORMAL LANE. INSTEAD OF SPEEDING UP, RAV-4 LOST POWER AND QUICKLY SLOWED DOWN, TO THE POINT OF NEEDING TO PULL BEHIND THE SLOW TRUCK THAT WE WERE TRYING TO PASS AND HAVING TO PULL TO THE SHOULDER OF THE ROAD. THE FAST TRUCK ON OUR TAIL STARTED TO (SLIGHTLY) FISHTAIL AND MIGHT HAVE CRASHED INTO US IF THE TRUCK DRIVER HAD LOST CONTROL OF HIS VEHICLE. WE PULLED TO THE SIDE OF THE ROAD AND TRIED TO REV THE ENGINE, BUT GOT NO RESPONSE, THE ENGINE ALMOST STALLING. SINCE THE ENGINE WAS NOT RESPONDING, WE SHUT THE CAR OFF, AND RESTARTED, AND WERE ABLE TO CONTINUE WITH NO FURTHER PROBLEMS, BUT DIDN'T USE THE CRUISE CONTROL AGAIN FOR THE REST OF THE RIDE HOME. WE REPORTED THE INCIDENT TO OUR DEALER, AND WERE TOLD THAT THIS WOULD BE VERY DIFFICULT TO TROUBLE-SHOOT, AND TO CONTINUE TO DRIVE AND BRING IT BACK IF IT HAPPENS AGAIN. WE NO LONGER TRUST THE CRUISE CONTROL ON THIS VEHICLE AND WILL NOT USE IT AGAIN. *TR

**1 Affected Product**

| Vehicle | | |
| --- | --- | --- |
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2014 |

September 11, 2016 **NHTSA ID NUMBER: 10905635**

**Components: ELECTRICAL SYSTEM, ENGINE, POWER TRAIN**

**NHTSA ID Number:** 10905635

**Incident Date** August 11, 2016

**Consumer Location** RIVERVIEW, FL

**Vehicle Identification Number** 2T3YFREV0EW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

RECENTLY I WAS DRIVING MY 2014 RAV4 NEAR DOWNTOWN TAMPA ON ADAMO DRIVE AND WAS TAKING A LEFT TURN, AND SUDDENLY I HEARD SOME KIND OF NOISE AND FELT LIKE MY VEHICLE WENT DEAD WITHOUT ANY ELECTRICAL POWER AND IT STARTED REVERSING ON IT'S OWN AND SPUN TO RIGHT. FORTUNATELY SINCE I WAS TAKING A TURN I WAS HARDY AT A SPEED OF ABOUT 10 MPH AND HENCE MY FRONT RIGHT PASSENGER SIDE DOOR & HEAD LIGHT ETC. GOT DAMAGED AND THERE WAS A VERY MINIMAL DAMAGE TO THE FRONT FENDER ON THE DRIVER SIDE OF THE VEHICLE BEHIND OUR RAV4. FOR THE SAME REASON NONE OF US - EITHER MYSELF, MY FRONT CO-PASSENGER OR THE DRIVER OF THE VEHICLE BEHIND OUR RAV4 WERE PHYSICALLY HURT AND WERE VERY SAFE AFTER THIS INCIDENT. THE DRIVER OF THE VEHICLE BEHIND OUR RAV4 INFORMED THAT HE HEARD A KIND OF STRANGE SOUND AND SAW OUR RAV4 REVERSING & TURNING RIGHT, AND HE MOVED AWAY INTO THE RIGHT LANE. THE POLICE OFFICER, WHO HAS COME ALSO INFORMED THAT SHE HAS COME ACROSS THIS KIND OF INCIDENTS WITH TOYOTA VEHICLES RECENTLY, AND DID NOT GIVE ME CITATION AFTER REVIEWING MY INCIDENT FREE DRIVING RECORD AND ALSO SHE COULD NOT FIND REASON FOR THIS FREAK INCIDENT WHICH LOOKS MORE LIKE A MECHANICAL DEFECT OF MY RAV4, AND ADVISED TO TAKE TO TOYOTA DEALER FOR FURTHER INVESTIGATION & RESOLUTION. ON FURTHER RESEARCH WE FOUND THAT THERE IS A SERIOUS RECALL - "ELECTRICAL POWER ASSIST SYSTEM" (EPS) FOR 2014 RAV4 WHICH WAS IDENTIFIED & DOCUMENTED BY TOYOTA ON 03/13/2015 BUT WAS NOT NOTIFIED TO THE CUSTOMERS. WE HAVE CONTACTED TOYOTA COMPANY, COMPLAINED ABOUT THIS INCIDENT, INFORMED THE RECALL AND WE ARE WAITING FOR A RESPONSE FROM TOYOTA AFTER A THOROUGH INVESTIGATION, COMPUTER DATA ANALYSIS FROM OUR RAV4. I AM HEREWITH ATTACHING THE DOCUMENTATION FOR THE RECALL. I AM VERY MUCH WORRIED & CONCERNED ABOUT THIS INCIDENT, SINCE IT IS OF VERY SERIOUS SAFETY ISSUE. PLEASE REVIEW AND REPLY AS SOON AS POSSIBLE. THANK YOU IN ADVANCE. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| TOYOTA | RAV4 | 2014 |

January 26, 2018 **NHTSA ID NUMBER: 11065324**

**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11065324

**Incident Date** January 2, 2018

**Consumer Location** EVANSVILLE, IN

**Vehicle Identification Number** 2T3YFREV7EW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

ISSUE FIRST STARTED WHEN BATTERY HAD TO BE JUMPED. THEN A FEW DAYS LATER WHEN IN MOTION DRIVING TO THE BANK, THE RADIO STARTED ACTING UP AND GOT STUCK ON STATION AND SONG AND THEN JUST WENT BLACK THEN A PICTURE OF THE RADIO APPEARED THE ON THE SCREEN AND WAS ATTEMPTING TO UPDATE BUT WOULD GO BLACK AGAIN AND THEN START OVER SO WAS STUCK IN SOME KIND OF REBOOT. NOT SURE IF ELECTRICAL PROBLEM OR WHAT SO TOOK IT IN TO DEALERSHIP AND THEY TOLD ME I SHOULD ONLY HAVE TO PAY $50-60 TO REBOOT IT. THEY CHECKED THE BATTERY AND SAID THE BATTERY WAS LOW CHARGE AND REPLACED IT AT NO CHARGE BUT SAID THEY WERE UNABLE TO REBOOT THE SYSTEM BECAUSE IT WOULD NOT STAY UP LONG ENOUGH BEFORE IT WOULD BLACK OUT AGAIN. SINCE IT WAS BARELY PAST THE WARRANTY PERIOD TOYOTA WOULD NOT COVER THE SYSTEM AND I WOULD HAVE TO PAY $1000 TO HAVE REFURBISHED SYSTEM INSTALLED. AFTER RESEARCHING ONLINE I FOUND THIS WAS A COMMON COMPLAINT AND FOUND ONE HERE AT THIS SITE AS WELL SO ADDING MINE. I SENT LETTERS AND EMAILS TO TOYOTA TO STAND BEHIND THEIR LONG TIME CUSTOMERS AND PRODUCTS

BUT THEY WOULD NOT BUDGE. MULTIMEDIA SYSTEMS SHOULD NOT FAIL AFTER 3 YEARS. I CALL THAT A DEFECT BUT I GUESS BECAUSE IT IS NOT CONSIDERED A SAFETY ISSUE IT IS NOT IMPORTANT TO TOYOTA. WE ARE A TOYOTA FAMILY AND HAVE BEEN DRIVING TOYOTA'S SINCE MY FIRST CAR BACK IN THE 70'S. I WILL PROBABLY GO AHEAD AND REPLACE WITH REFURBISHED SYSTEM HOPING THIS IS NOT AN ELECTRICAL ISSUE AND REPEAT BUT I WILL CERTAINLY RECONSIDER BEFORE PURCHASING ANOTHER TOYOTA IN THE FUTURE.

**1 Affected Product**

### Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2014 |

January 31, 2018 **NHTSA ID NUMBER: 11066101**

**Components: ELECTRONIC STABILITY CONTROL, ELECTRICAL SYSTEM, EXTERIOR LIGHTING**

**NHTSA ID Number:** 11066101

**Incident Date** January 30, 2018

**Consumer Location** BAYTOWN, TX

**Vehicle Identification Number** 2T3YFREV6EW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0
I WAS DRIVING ON THE HIGHWAY WHEN THE CAR SHUT OFF COMPLETELY AND TURNED ON AND OFF REPEATEDLY, AND INSTANTANEOUS FOR A FEW SECONDS (LIKE IT WAS BLINKING) SUPER FAST. EVERYTHING WAS GOING ON AND OFF. AS

I WAS PULLING ONTO THE SHOULDER FROM THE MIDDLE LANE ON THE
HIGHWAY, IT SHUT OFF COMPLETELY!!! I COULDN'T EVEN PUT MY HAZARDS ON.
I WAS WAITING IN THE CAR FOR A TOW TRUCK AND MY HUSBAND, I WAS WITH
MY DAUGHTER. THE CAR STARTED TO SMOKE AND FLAME AND WAS ON FIRE.
WE JUMPED OUT AND YET WAS UP IN FLAMES!!!!!!!

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2014 |

July 28, 2018 **NHTSA ID NUMBER: 11114328**

**Components: ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11114328

**Incident Date** July 28, 2018

**Consumer Location** JACKSONVILLE, FL

**Vehicle Identification Number** 2T3WFREV5EW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0

WHILE TRAVELING WESTBOUND ON INTERSTATE 295 IN JACKSONVILLE
FLORIDA, WE HAD JUST GOT ON TO THE BUCKMAN BRIDGE WHEN THE CAR
SLOWED, UNCOMMANDED TO 20MPH. I LOOKED AT THE INSTRUMENT CLUSTER
AND THE ALTERNATOR AND THE AUTO LSD OR TRACK LIGHTS WERE
ILLUMINATED. THE ENGINE OPERATING TEMPERATURE WAS NORMAL. SINCE
THE ENGINE TEMPERATURE WAS NORMAL I TOLD MY DAUGHTER TO KEEP
DRIVING TO GET OFF THE BRIDGE, I FELT AS THOUGH THE BRIDGE WAS A BAD

PLACE TO PULL OVER. AFTER ABOUT A MINUTE WE STARTED TO SMELL SOMETHING BURNING AND AT THIS POINT WE DECIDED TO PULL OVER. WHEN WE CAME TO A COMPLETE STOP WE SAW SMOKE COMING FROM THE DRIVERS SIDE OF THE ENGINE COMPARTMENT. THREE OF US THEN EVACUATED THE VEHICLE AND STARTED WALKING AGAINST TRAFFIC ON THE BRIDGE. AS WE WERE WALKING AWAY THE SMOKE INTENSIFIED AND THEN ERUPTED INTO FLAMES THAT EMANATED FROM THE DRIVERS SIDE JUST BELOW THE WINDSHIELD. I CALLED 911 AND THE FIRE DEPARTMENT CAME AND EXTINGUISHED THE FIRE. I HAVE ATTACHED PICTURES OF THE DAMAGE. I BELIEVE IT WAS AN ELECTRICAL FIRE.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2014 |

October 28, 2019 **NHTSA ID NUMBER: 11271680**

**Components: ELECTRICAL SYSTEM, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 11271680

**Incident Date** October 27, 2019

**Consumer Location** SAN JOSE, CA

**Vehicle Identification Number** 2T3YL4DVXEW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

CAR RANDOMLY STOPPED ACCELERATING WHILE ON THE FREEWAY. THE CHECK EV SYSTEM LIGHT CAME ON WITH A TURTLE IN A CIRCLE AS WELL. THANKFULLY WE WERE ABLE TO PUSH TO SIDE OF ROAD.

**1 Affected Product**

| Vehicle | | |
| --- | --- | --- |
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2014 |

February 4, 2021 **NHTSA ID NUMBER: 11394683**

**Components: ENGINE**

**NHTSA ID Number:** 11394683

**Incident Date** January 22, 2021

**Consumer Location** PONTE VEDRA BEACH, FL

**Vehicle Identification Number** 2T3DFREV7EW****

**Summary of Complaint**

**CRASH** No

**FIRE** Yes

**INJURIES** 0

**DEATHS** 0

TL* THE CONTACT OWNED A 2014 TOYOTA RAV4. THE CONTACT STATED WHILE DRIVING APPROXIMATELY 5 MPH, THE VEHICLE CAUGHT ON FIRE COMING IN THE DRIVER'S SIDE ENGINE COMPARTMENT. THE FIRE DEPARTMENT WAS CONTACTED AND ARRIVED AT THE SCENE AND EXTINGUISHED THE FIRE. THE VEHICLE WAS TOWED TO INDEPENDENT MECHANIC WHERE IT WAS DEEMED A TOTAL LOSS. UPON INVESTIGATION, THE CONTACT ASSOCIATED THE FAILURE WITH NHTSA CAMPAIGN NUMBER: 15V011000 (TRAILER HITCHES, EXTERIOR LIGHTING) HOWEVER, THE VIN WAS NOT INCLUDED. THE MANUFACTURER WAS

NOT INFORMED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 51,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2014 |

October 20, 2017 **NHTSA ID NUMBER: 11034782**
**Components: ENGINE, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11034782

**Incident Date** September 20, 2017

**Consumer Location** NORTHVILLE, MI

**Vehicle Identification Number** JTMDFREV7ED****

**Summary of Complaint**

CRASHNo

FIREYes

INJURIES0

DEATHS0

RAV4 2014 CAUGHT A FIRE WHEN WAS DRIVEN. THE STEERING WHEEL WAS SUDDENLY STUCK WHEN WAS DRIVEN ON THE LOCAL ROAD AT SPEED LESS THAN 40 MILES, SO PULLED OVER TO THE SHOULDER ON THE ROAD. SUDDENLY THE SMOKES CAME OUT UNDER THE HOOD, AND TURN TO FLAME. THE CAR BURNED ALL FRONT WINDSHIELD, ENGINE, BATTERY, AND HOOD. FIRE TRUCK COMES UP AND POLICEMAN HELP TO EXTINGUISH THE FIRE. IT WAS NO ACCIDENT, NO HIGH SPEED ON LOCAL ROAD, AND NO RAINNING DAY.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2014 |

## **2015 TOYOTA RAV4**

<u>December 11, 2015</u> **NHTSA ID NUMBER: 10809623**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 10809623

**Incident Date** October 13, 2015

**Consumer Location** POUGHKEEPSIE, NY

**Vehicle Identification Number** 2T3BFREV9FW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

TL* THE CONTACT OWNS A 2015 TOYOTA RAV4. THE CONTACT STATED THAT THERE WAS AN ABNORMAL NOISE THAT PROGRESSED RANDOMLY. VARIOUS WARNING INDICATOR LIGHTS FLASHED AND THE VEHICLE WAS HESITANT TO START ON SEVERAL OCCASIONS. UPON STARTING THE VEHICLE, IT STALLED SEVERAL TIMES AND ALSO WOULD NOT START. THE VEHICLE WAS TAKEN TO THE DEALER MORE THAN THREE TIMES AND THEY WERE NOT ABLE TO REPLICATE AND DIAGNOSE THE FAILURE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE MORE THAN ONCE AND WAS UNABLE TO PROVIDE A PERMANENT REMEDY FOR THE CONDITION. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 5,700.

**1 Affected Product**

- 46 -

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| TOYOTA | RAV4 | 2015 |

May 3, 2016 **NHTSA ID NUMBER: 10862741**

**Components: ENGINE, ELECTRICAL SYSTEM, UNKNOWN OR OTHER**

**NHTSA ID Number:** 10862741

**Incident Date** October 15, 2015

**Consumer Location** HAMPTON, AR

**Vehicle Identification Number** 2T3RFREV2FW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0
THE LIGHT ON THE CRUISE CONTROL STALK BLINKS AND IT IS VERY
DISTRACTING AT NIGHT WHILE DRIVING. THEN THE CRUISE CONTROL STARTED
DROPPING OUT WHILE DRIVING. NO WARNING LIGHTS OR CODES WERE STORED
IN THE COMPUTER WHEN CHECKED BY THE DEALER. THE DEALER REPLACED
THE CRUISE CONTROL SWITCH, BUT THE PROBLEM GOT WORSE. THE ENGINE
STARTED SHUTTING OFF WHILE DRIVING ON THE HIGHWAY WITH A TOTAL LOSS
OF ELECTRICAL POWER AND WOULD TAKE SEVERAL MINUTES BEFORE IT
WOULD RESTART DUE TO NO ELECTRICAL POWER. THE DEALER THEN ADJUSTED
THE SWITCH ON THE BRAKE PEDAL BUT IT DIDN'T HELP. THE
RADIO/NAVIGATION SCREEN HAS SINCE LOCKED UP AND YOU HAVE TO
RESTART THE CAR TO RESET IT. THE ENGINE WILL SOMETIMES SHUT OF FOR A
FEW SECONDS AND THE RESTART ON ITS OWN WHILE DRIVING. WHEN THIS
HAPPENS SEVERAL WARNING LIGHTS STAY ON (ABS, AIRBAGS, TRACTION

CONTROL & ALL WHEEL DRIVE). THE LIGHTS DO NOT RESET UNTIL THE CAR IS TURNED OFF AND BACK ON BY THE KEY. I HAVE ALMOST BEEN INVOLVED IN 3 ACCIDENTS BECAUSE OF THESE PROBLEMS. THE CAR IS NOW IN THE SHOP AFTER CONTACTING THE MANUFACTURER SEVERAL TIMES ABOUT THE FAILURE OF THE DEALER TO REPAIR THE CAR AND THAT IT IS UNSAFE TO DRIVE. IT IS AT A DIFFERENT DEALERSHIP DUE TO THE SELLING DEALERS INCOMPETENCE IN THEIR SERVICE DEPARTMENT AND MANAGEMENT TO ADDRESS THE PROBLEM. THESE PROBLEMS HAVE BEEN GOING ON FOR OVER 5 MONTHS AND OVER A PERIOD OF 15,000 MILES AND I DO NOT BELIEVE IT CAN BE FIXED AND I DO NOT BELIEVE THE MANUFACTURER IS REALLY TRYING TO REPAIR THE CAR BECAUSE OF ALL THE STALLING THEY ARE CURRENTLY DOING AT THIS TIME. I NEED YOUR HELP.

**1 Affected Product**

| Vehicle | | |
|---|---|---|
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2015 |

June 17, 2016 **NHTSA ID NUMBER: 10874884**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 10874884

**Incident Date** November 2, 2015

**Consumer Location** HAMPTON, AR

**Vehicle Identification Number** 2T3RFREV2FW****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

TL* THE CONTACT OWNS A 2015 TOYOTA RAV4. THE CONTACT STATED THAT THE VEHICLE EXPERIENCED A LOSS OF POWER. THE FAILURE WAS SPORADIC. THE CONTACT STATED THAT THE VEHICLE WOULD SPORADICALLY RESTART INDEPENDENTLY. THE ANTI-LOCK BRAKE SYSTEM, AIR BAG, TRACTION CONTROL, AND ALL WHEEL DRIVE WARNING INDICATORS ILLUMINATED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE FAILURE COULD NOT BE REPLICATED. THE FAILURE OCCURRED APPROXIMATELY SIX TIMES. THE FAILURE MILEAGE WAS APPROXIMATELY 9,000. UPDATED 08/31/16*LJ

CONSUMER STATED THE LIGHT O HE CRUISE CONTROL STALK BLINKS OFF AND ON CRUISE CONTROL DROPS OUT UNEXPECTEDLY. THE ENGINE SHUTS DOWN WHILE DRIVING DOWN THE HIGHWAY AND YOU LOSE ALL ELECTRICAL POWER. IT WILL SOMETIMES NOT RESTART FOR UP TO 15 MINUTES. THE ENGINES SHUTS DOWN FOR A FEW SECONDS TO A MINUTE AND THEN RESTARTS ON ITS OWN. IT LEAVES THE WARNING LIGHTS FOR THE ABS, AWD AND TRACTION CONTROL ON AND THEY DON'T GO OFF UNTIL YOU CYCLE THE IGNITION SWITCH. THE RADIO/ NAVIGATION SCREEN ALSO LOCKS UP WHEN THIS HAPPENS. THE CAR HAS BEEN LOOKED AT A TOTAL OF SEVEN TIMES FOR THIS PROBLEM. CAR HAS SPUN 9 TIMES BECAUSE OF THIS PROBLEM. UPDATED 6/12/18*JB

**1 Affected Product**

| Vehicle | | |
|---|---|---|
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2015 |

October 27, 2017 **NHTSA ID NUMBER: 11040382**

**Components: UNKNOWN OR OTHER**

**NHTSA ID Number:** 11040382

**Incident Date** October 11, 2017

**Consumer Location** HUDSON, NH

**Vehicle Identification Number** 2T3RFREV9FW****

**Summary of Complaint**

**CRASH** No

**FIRE** Yes

**INJURIES** 0

**DEATHS** 0
THE CAR STARTED ON FIRE AS I WAITED FOR A PARKING SPACE IN A PARKING LOT.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2015 |

---

September 16, 2018 **NHTSA ID NUMBER: 11129760**

**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11129760

**Incident Date** September 12, 2018

**Consumer Location** VALLEY SPRINGS, CA

**Vehicle Identification Number** 2T3YFREV8FW****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0
WE PURCHASED A TOYOTA RAV4 WITH A 100% O.K. FROM TOYOTA DEALER FOUR WEEKS AND 200 MILES AFTER PARKING IN THE GARAGE THE NEXT MORNING IT WOULD NOT START SEVERAL TRY'S LATER IT BARLEY STARTED, I

AM A RETIRED MECHANIC, THE HEADLIGHTS WERE NORMAL BRIGHT WITH HORN HONKING, THE DEALER TOLD MY WIFE THE BATTERY HAD 0 CRANKING AMPS THEY INSTALLED A NEW 80 MONTH TOYOTA BATTERY,. MY PROBLEM IS SAFETY ISSUES GOING TO THE INTERNET AND SEARCHING TOYOTA PROBLEMS BATTERY'S, ELECTRICAL SHORTS, ELECTRICAL FIRES, STOPPING UNEXPECTEDLY LOSS OF STEERING, ELECTRIC WIRE BURN SMELL, I COULD GO ON MY POINT IS EVERYTHING IS TIED TOGETHER ELECTRICAL ISSUE WITH WIRING SHORTS ! I DON'T WANT TO SOUND LIKE AN ALARMIST BUT IT MIGHT SOUND THAT WAY, SOMETHING IS CAUSING ALL THE ISSUES WITH EARLY BATTERY FAILURE, AS A MECHANIC 50 YEARS I HAVE SEEN THIS BEFORE AND ALMOST ALWAYS IT IS A ELECTRICAL SHORT SOME WARE IN THE SYSTEM, AND IN SOME VEHICLES YOU NO LONGER HAVE THROTTLE CABLES OR LINKAGE YOU HAVE ELECTRIC ASSIST MEANING A MOTOR OR SOME KIND OF PRESSURE SENSITIVE DEVICE THAT CAN SHORT AND INADVERTENTLY CAUSE THE VEHICLE TO STOP OR CAUSE THE VEHICLE TO ADVANCE FULL THROTTLE WITH NO WAY TO STOP! I'M HOPING SOME ONE WILL READ THIS THAT CAN HELP PUT OUR MINDS TO REST OR PLEASE LOOK INTO THIS ISSUE, I AM AFRAID FOR MY WIFE AND ALL LOVED ONES DRIVING THESE VEHICLES.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2015 |

September 16, 2018 **NHTSA ID NUMBER: 11129760**

**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11129760

**Incident Date** September 12, 2018

**Consumer Location** VALLEY SPRINGS, CA

**Vehicle Identification Number** 2T3YFREV8FW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

WE PURCHASED A TOYOTA RAV4 WITH A 100% O.K. FROM TOYOTA DEALER FOUR WEEKS AND 200 MILES AFTER PARKING IN THE GARAGE THE NEXT MORNING IT WOULD NOT START SEVERAL TRY'S LATER IT BARLEY STARTED, I AM A RETIRED MECHANIC, THE HEADLIGHTS WERE NORMAL BRIGHT WITH HORN HONKING, THE DEALER TOLD MY WIFE THE BATTERY HAD 0 CRANKING AMPS THEY INSTALLED A NEW 80 MONTH TOYOTA BATTERY,. MY PROBLEM IS SAFETY ISSUES GOING TO THE INTERNET AND SEARCHING TOYOTA PROBLEMS BATTERY'S, ELECTRICAL SHORTS, ELECTRICAL FIRES, STOPPING UNEXPECTEDLY LOSS OF STEERING, ELECTRIC WIRE BURN SMELL, I COULD GO ON MY POINT IS EVERYTHING IS TIED TOGETHER ELECTRICAL ISSUE WITH WIRING SHORTS ! I DON'T WANT TO SOUND LIKE AN ALARMIST BUT IT MIGHT SOUND THAT WAY, SOMETHING IS CAUSING ALL THE ISSUES WITH EARLY BATTERY FAILURE, AS A MECHANIC 50 YEARS I HAVE SEEN THIS BEFORE AND ALMOST ALWAYS IT IS A ELECTRICAL SHORT SOME WARE IN THE SYSTEM, AND IN SOME VEHICLES YOU NO LONGER HAVE THROTTLE CABLES OR LINKAGE YOU HAVE ELECTRIC ASSIST MEANING A MOTOR OR SOME KIND OF PRESSURE SENSITIVE DEVICE THAT CAN SHORT AND INADVERTENTLY CAUSE THE VEHICLE TO STOP OR CAUSE THE VEHICLE TO ADVANCE FULL THROTTLE WITH NO WAY TO STOP! I'M HOPING SOME ONE WILL READ THIS THAT CAN HELP PUT OUR MINDS TO REST OR PLEASE LOOK INTO THIS ISSUE, I AM AFRAID FOR MY WIFE AND ALL LOVED ONES DRIVING THESE VEHICLES.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2015 |

October 7, 2018 **NHTSA ID NUMBER: 11138884**

**Components: STRUCTURE, ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11138884

**Incident Date** October 5, 2018

**Consumer Location** MCKINNEY, TX

**Vehicle Identification Number** 2T3WFREVXFW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0
CAR STALLED SO I PULLED OVER. THERE WAS SMOKING UNDER THE HOOD. WITHIN MINUTES IT TURNED INTO A BIG FIRE. FIRE DEPARTMENT HAD TO BE CALLED.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2015 |

August 27, 2019 **NHTSA ID NUMBER: 11246595**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11246595

**Incident Date** August 19, 2019

**Consumer Location** YONKERS, NY

**Vehicle Identification Number** 2T3RFREV2FW****

**Summary of Complaint**

**CRASH No**

**FIRE Yes**

**INJURIES 0**

**DEATHS 0**

I DROVE FOR A FEW SECONDS, LESS THAN A BLOCK OUT OF A PARKING LOT, ONTO A LOCAL STREET, WHEN MY 2015 RAV4 SUDDENLY SHUT DOWN AND SMOKE STARTING COMING OUT FROM UNDER THE HOOD. I TURNED THE STEERING WHEEL TO ROLL TO THE SIDE OF THE ROAD AND GET OUT OF THE WAY OF TRAFFIC, AND GOT OUT OF THE CAR TO WALK FAR AWAY. I SAW FLAMES UNDER THE FRONT OF THE CAR AND CALLED 911.

**1 Affected Product**

### Vehicle

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2015 |

February 25, 2020 **NHTSA ID NUMBER: 11311546**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11311546

**Incident Date** February 25, 2020

**Consumer Location** RUTLEDGE, TN

**Vehicle Identification Number** 2T3RFREV7FW****

**Summary of Complaint**

**CRASH No**

**FIRE Yes**

**INJURIES 0**

**DEATHS0**
I WAS DRIVING ON THE INTERSTATE ENTRANCE RAMP WHEN THE BATTERY DIED BUT THEN I WAS ABLE TO START IT BACK AND DROVE JUST A SHORT DISTANCE WHEN THE HOOD STARTED SMOKING. I PULLED OVER AND TURNED THE MOTOR OFF AND RAISED THE HOOD, AND THE BATTERY WAS ON FIRE. THE BATTERY AND ELECTRICAL SYSTEM BURNED.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2015 |

March 3, 2020 **NHTSA ID NUMBER: 11315799**

**Components: ELECTRICAL SYSTEM, ENGINE, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11315799

**Incident Date** February 8, 2020

**Consumer Location** ROCKVILLE, MD

**Vehicle Identification Number** 2T3BFREV8FW****

**Summary of Complaint**

**CRASHNo**

**FIREYes**

**INJURIES0**

**DEATHS0**
SHORTLY AFTER DRIVING WITH NO ISSUES, THE PARKED CAR STARTED TO SMOKE FROM UNDERNEATH THE HOOD. WITHIN SECONDS, A LARGE FIRE HAD STARTED WHICH COMPLETELY CONSUMED THE CAR AND ALSO SPREAD TO MY WIFE'S CAR AND THE HOUSE'S CARPORT. INSURANCE INVESTIGATOR INFORMED US THAT THE FIRE LIKELY STARTED IN/NEAR THE ENGINE TOWARDS THE DRIVERS SIDE BASED ON WHERE THE HOTTEST PARTS OF THE FIRE APPEARED

TO HAVE BEEN. HOWEVER, NO CONCLUSIVE DETERMINATION WAS MADE REGARDING THE CAUSE.

THE CAR WAS IN GOOD CONDITION AND HAD NOT HAD ANY MAINTENANCE WORK PERFORMED ON IT RECENTLY. THERE WERE ALSO NO SIGNS OF INTRUSION BY RODENTS OR OTHER ANIMALS. THIS HAPPENED WITH NO WARNING.

I'VE ALSO SINCE LEARNED THIS HAD HAPPENED ONLY ONE MONTH BEFORE TO THE PARENTS OF ONE OF OUR CHILDRENS' FRIENDS. THEY ALSO HAD A RAV4, ALTHOUGH NOT THE SAME MODEL YEAR (I BELIEVE IT WAS A 2013). I HAVE ALSO SEEN MANY OTHER REPORTS WHILE RESEARCHING THIS ISSUE. IF THERE IS A DEFECT OR DESIGN FLAW CONTRIBUTING TO THESE FIRES, IT SHOULD BE ADDRESSED QUICKLY!

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2015 |

## **2016 TOYOTA RAV4**

September 10, 2017 **NHTSA ID NUMBER: 11022546**

**Components: ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11022546

**Incident Date** September 10, 2017

**Consumer Location** WHITESTONE, NY

**Vehicle Identification Number** 2T3RFREV9GW****

**Summary of Complaint**

**CRASH**No

**FIRENo**

**INJURIES0**

**DEATHS0**

WHILE WAITING FOR RED LIGHT ON A LOCAL STREET (THE ENGINE WAS RUNNING BUT IN A STOPPED FOOT ON THE BRAKE POSITION)

THE ENGINE SHUT DOWN AND DASHBOARD DISPLAY MESSAGE APPEARED STATING "CHARGING SYSTEM FAILURE".

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2016 |

January 18, 2018 **NHTSA ID NUMBER: 11063443**

**Components: ELECTRONIC STABILITY CONTROL, ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11063443

**Incident Date** January 16, 2018

**Consumer Location** BROOKLINE, MA

**Vehicle Identification Number** 2T3JFREV3GW****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

IT WAS A COLD DAY IN MASSACHUSETTS. I WARMED UP THE CAR IN THE MORNING FOR 10 MINUTES BEFORE STARTING TO DRIVE TO WORK. I GOT ONTO

THE MASSACHUSETTS PIKE AND AFTER A COUPLE EXITS OF CRUISING AT 60 HIT STOP AND GO TRAFFIC. AT ONE OF THE ENTRANCES AND WHEN I SLOWED DOWN TO A STOP IN THE TRAFFIC MY CAR FLASHED THE BATTERY CRITICAL CHARGING ERROR FOR A SPLIT SECOND BEFORE SAYING EVERYTHING NEEDED TO BE RESTARTED BY PUTTING THE CAR INTO PARK. AFTER THAT, THE CAR COMPLETELY SHUT DOWN. I WAS NOT ABLE TO PUT ON HAZARDS UNTIL ABOUT 15 SECONDS LATER OF TRYING TO GET THE POWER BACK ON DID THE CAR START UP. WITHIN THAT TIME A DRIVER BEHIND ME DECIDED TO HIT ME IN THE REAR. ON RESTART THE CAR DIDN'T SHOW THE FAULT BUT UPON LOOKING UP THE BATTERY CRITICAL CHARGING FAILURE IT STATES TO NOT DRIVE THE CAR AND TO IMMEDIATELY TAKE IT TO A SHOP. THE SHOP CANNOT FIND THE CODE DUE TO IT BEING WIPED MAKING SOLVING THE ISSUE EVEN MORE DIFFICULT.

**1 Affected Product**

| Vehicle | | |
|---|---|---|
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2016 |

March 5, 2019 **NHTSA ID NUMBER: 11184350**

**Components: ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11184350

**Incident Date** August 20, 2016

**Consumer Location** BRADENTON, FL

**Vehicle Identification Number** 2T3YFREV3GW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNS A 2016 TOYOTA RAV4. WHILE ATTEMPTING TO MAKE A TURN FROM A STOP, THE VEHICLE LOST POWER. THERE WAS NO WARNING INDICATOR ILLUMINATED. THE VEHICLE RESTARTED WITHIN TWO SECONDS, BUT THE FAILURE RECURRED. THE VEHICLE WAS TAKEN TO GETTEL TOYOTA OF LAKEWOOD (941-567-1080, LOCATED AT 5959 E. STATE RD 64, BRADENTON, FL 34208) WHERE IT WAS DETERMINED THAT THE VEHICLE WAS PERFORMING AS DESIGNED. THE FAILURE RECURRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURES AND DID NOT ASSIST. THE FAILURE WAS NOT REMEDIED. THE FAILURE MILEAGE WAS APPROXIMATELY 1,000.

**1 Affected Product**

### Vehicle

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2016 |

October 3, 2017 **NHTSA ID NUMBER: 11031632**

**Components: UNKNOWN OR OTHER**

**NHTSA ID Number:** 11031632

**Incident Date** September 25, 2017

**Consumer Location** HOUSTON, TX

**Vehicle Identification Number** 2T3ZFREV6GW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0
I WAS DRIVING ON THE HIGHWAY AND SMOKE BEGAN TO FILL MY VEHICLE. I PULLED OVER AND MY VEHICLE CAUGHT FIRE. UNSURE OF THE CAUSE.

**1 Affected Product**

### Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2016 |

### 2017 TOYOTA RAV4

March 11, 2018 **NHTSA ID NUMBER: 11078543**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11078543

**Incident Date** December 23, 2017

**Consumer Location** WHITINSVILLE, MA

**Vehicle Identification Number** JTMJFREV3HJ****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE DRIVING ON A MAJOR HIGHWAY AT 65 MPH. THE ENGINE SHUT OFF AND ALL SCREENS AND GAUGES SHUT OFF FOR ABOUT 3 TO 5 SECONDS THEN THE CAR RESTARTED ON ITS OWN AND BEGAN TO ACCELERATE QUICKLY SO I HAD TO USE THE BRAKES TO SLOW THE CAR DOWN. THIS EVENT HAPPENED THREE TIMES THAT DAY ALL ON THE HIGHWAY AND WITH THE CRUISE CONTROL ON.I CALLED THE TOYOTA DEALER TO HAVE THE CAR CHECKED OUT THE CAR WAS CHECKED OUT NO ISSUES FOUND. A FEW WEEKS LATER I GOT THE OIL CHANGED AT THE DEALER AND AFTER I LEFT THE DEALERSHIP THE ROADS WERE ICY SO I WAS DRIVING AROUND 25 MPH WHEN THE ENGINE STOPPED RUNNING AND THE DASH WENT OUT FOR ABOUT 3 TO 5 SECONDS AND THEN THE CAR STARTED RUNNING AGAIN THIS HAPPENED AGAIN A FEW MINUTES LATER THE CRUISE CONTROL WAS NOT ON AT THIS TIME. I CALLED THE DEALER AND AN

APPOINTMENT WAS MADE TO CHECK THE CAR AGAIN I ALSO OPENED A CLAIM WITH TOYOTA FOR THIS ISSUE. THE CAR WAS EVALUATED AGAIN STILL NO ISSUE COULD BE FOUND. THE RESPONSE FROM TOYOTA WAS NO ISSUE WAS FOUND WITH THE CAR AND NO FURTHER ACTION WOULD BE TAKEN BY TOYOTA BECAUSE NOTHING WAS FOUND ON THE DATA RECORDER. THIS CAR IS ON A TOYOTA LEASE AND I DO NOT FEEL COMFORTABLE DRIVING IT AND I WILL NOT LET MY WIFE DRIVE THIS CAR MY FEELING IS THAT SOMEONE COULD GET HURT OR WORSE AND I DO NOT WANT TO SEE THAT HAPPEN. I HAVE READ THAT OTHER RAVS ARE HAVING THE SAME ISSUE.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2017 |

June 1, 2018 **NHTSA ID NUMBER: 11099181**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11099181

**Incident Date** May 30, 2018

**Consumer Location** VERONA, PA

**Vehicle Identification Number** 2T3DFREV0HW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

I WAS DRIVING HOME AND AT A RED LIGHT WHEN MY RAV4 STARTED TO SHAKE AND FEEL AS THOUGH IT WAS GOING TO STALL OUT. EVERYTHING SHUT DOWN AND I WAS UNABLE TO MOVE. I RECEIVED THE FOLLOWING ERROR ON OUR

DISPLAY, "CHARGING SYSTEM MALFUNCTION". AFTER A FEW SECONDS I WAS ABLE TO TURN MY VEHICLE ON AND PROCEED THROUGH THE INTERSECTION. APPROXIMATELY ONE MINUTE LATER IT STARTED TO STUTTER AGAIN. I WAS ABLE TO MAKE IT TO MY DRIVEWAY BEFORE IT TURNED OFF AND LOST POWER. I INFORMED MY HUSBAND WHAT HAD HAPPENED AND HE TOOK THE VEHICLE OUT TO SEE IF THE SAME ERROR WOULD OCCUR. WITHIN FIVE MINUTES INTO HIS DRIVE THE VEHICLE SHUT OFF. WE HAD IT TOWED TO OUR TOYOTA DEALERSHIP, AS WE JUST PURCHASED THIS RAV4 BRAND NEW NINE MONTHS AGO. THE SERVICE DEPARTMENT CONDUCTED MULTIPLE TESTS AND INFORMED US THAT EVERYTHING WAS FINE. IT IS A LITTLE UNNERVING TO KNOW THAT THE VEHICLE I DRIVE COULD COMPLETELY TURN OFF, POTENTIALLY ON A BUSY HIGHWAY. THE RISK FOR SERIOUS INJURY OR DEATH, TO ME OR MY FAMILY, IS HIGH IF THIS OCCURS. AGAIN, TO RECAP, THE VEHICLE SHUT DOWN WHILE STOPPED AT A RED LIGHT AND ALSO WHEN IT WAS IN MOTION.

**1 Affected Product**

## Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

June 21, 2018 **NHTSA ID NUMBER: 11102957**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11102957

**Incident Date** June 20, 2018

**Consumer Location** TOMS RIVER, NJ

**Vehicle Identification Number** JTMBFREV2HJ****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS0**

ON OCCASION, WHILE GOING FROM REVERSE TO DRIVE, THE VEHICLE SHUTS DOWN AND I GET A MESSAGE THAT SAYS "CHARGING MALFUNCTION". IT DOES NOT HAPPEN ALL THE TIME. IT HAS HAPPENED WHEN I PULL OUT OF MY DRIVEWAY ONTO THE BUSY STREET I LIVE ON. IT HAS ALSO HAPPENED ONCE WHEN I PARALLELL PARKED. I HAVE TO SHUT THE CAR OFF AND THEN RESTART FOR IT TO WORK AGAIN. I TRIED TO RECREATE THE SITUATION BUT CANNOT. I BROUGHT IT TO TOYOTA AND THEY CANNOT FIND THE PROBLEM EITHER. MOST RECENTLY IT HAPPENED TO ME LAST NIGHT WHILE PULLING OUT OF MY DRIVEWAY. (6-20-18) TIME. I PURCHASED THE CAR AUGUST OF 2017 AND IT STILL IS UNDER WARRANTY HOWEVER I HAVE HAD NO LUCK WITH TOYOTA. THEIR RESPONSE WAS WE WILL NOTE IT IN THE FILE.

**1 Affected Product**

| Vehicle | | |
|---------|---------|---------|
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2017 |

August 20, 2019 **NHTSA ID NUMBER: 11245340**

**Components: ENGINE, ELECTRICAL SYSTEM, TRACTION CONTROL SYSTEM**

**NHTSA ID Number:** 11245340

**Incident Date** August 18, 2019

**Consumer Location** Unknown

**Vehicle Identification Number** 2T3WFREV4HW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNS A 2017 TOYOTA RAV4. WHILE DRIVING APPROXIMATELY 10 MPH, THE VEHICLE STALLED. IN ADDITION, THE TRACTION CONTROL AND CHARGING SYSTEM MALFUNCTION INDICATORS ILLUMINATED. THE VEHICLE WAS ABLE TO RESTART AND WAS TAKEN TO TOYOTA OF HOLLYWOOD (6000 HOLLYWOOD BLVD, HOLLYWOOD CA, 323-498-2260) TO BE DIAGNOSED. THE RESULTS WERE UNKNOWN. THE VEHICLE WAS BEING REPAIRED UNDER WARRANTY. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS 27,220.

**1 Affected Product**

## Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

December 7, 2019 **NHTSA ID NUMBER: 11287688**

**Components: ELECTRICAL SYSTEM, FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 11287688

**Incident Date** November 10, 2019

**Consumer Location** CHARLOTTE, NC

**Vehicle Identification Number** 2T3NFREVXHW****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

VEHICLE DIED IN THE MIDDLE OF THE ROAD WHILE DRIVING NORMALLY. THE VEHICLE WAS ON A CITY STREET.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2017 |

March 11, 2020 **NHTSA ID NUMBER: 11317639**

**Components: ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11317639

**Incident Date** March 5, 2020

**Consumer Location** SEATTLE, WA

**Vehicle Identification Number** 2T3RFREV5HW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0

WHILE I WAS DRIVING HOME FROM WORK ON THURSDAY, MARCH 5, 2020, I SMELLED SMOKE. I LOOKED AT THE TEMPERATURE ON THE DASHBOARD AND IT SHOWED THAT THE TEMPERATURE WAS A LITTLE BELOW THE MIDDLE LINE INDICATING THE VEHICLE WAS NOT HOT. I CONTINUED DRIVING FOR A COUPLE MORE BLOCKS AND CONTINUED TO SMELL SMOKE SO ATTEMPTED TO PULL OVER INTO A PARKING LOT. WHEN I TRIED TO PULL OVER, THE VEHICLE STOPPED ON ITS OWN SO I WAS HALF WAY BETWEEN THE STREET AND PARKING LOT. I SAW SMOKE COME OUT FROM UNDER THE HOOD OF THE VEHICLE. ABOUT TWO MINUTES LATER, FLAMES STARTED COMING OUT FROM UNDER THE HOOD. THE VEHICLE CAUGHT FIRE.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

October 16, 2020 **NHTSA ID NUMBER: 11364719**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11364719

**Incident Date** October 10, 2018

**Consumer Location** WEST PARK, FL

**Vehicle Identification Number** 2T3WFREV2HW****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

TL* THE CONTACT'S PARENTS OWNS A 2017 TOYOTA RAV4. THE CONTACT STATED THAT THE VEHICLE WAS AT A STAND STILL, WHEN HE NOTICED YELLOW FLUID UNDER THE VEHICLE. THE VEHICLE WAS TAKEN TO THE LOCAL DEALER TOYOTA OF HOLLYWOOD FL LOCATED AT 1841 FL-7, HOLLYWOOD, FL 33021, (866) 332-6839, WHERE IT WAS DIAGNOSED WITH NEEDING THE BATTERY TO BE REPLACED. THE VEHICLE WAS REPAIRED HOWEVER, THE FAILURE RECURRED. THE CONTACT STATED THE BATTERY ACID LEAKED AND DAMAGE SEVERAL COMPONENTS UNDER THE HOOD. THE MANUFACTURER HAD BEEN INFORMED OF FAILURE. THE FAILURE MILEAGE WAS 15,087.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

February 10, 2020 **NHTSA ID NUMBER: 11308368**

**Components: UNKNOWN OR OTHER**

**NHTSA ID Number:** 11308368

**Incident Date** February 8, 2020

**Consumer Location** BALTIMORE, MD

**Vehicle Identification Number** 2T3ZFREV8HW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNED A 2017 TOYOTA RAV4. THE CONTACT STATED THAT WHILE HER DAUGHTER WAS MAKING A TURN THE STEERING WHEEL CEASED AS WHITE SMOKE WAS SEEN COMING FROM UNDER THE HOOD. THE CONTACT STATED THAT THE VEHICLE CAME TO A STOP AS FLAMES WERE SEEN COMING FROM UNDER THE HOOD AND FROM UNDERNEATH THE VEHICLE. THE CONTACT'S DAUGHTER WAS ABLE TO EXIT THE VEHICLE WITH NO INJURIES. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUHISED THE FIRE. A FIRE DEPARTMENT REPORT WAS FILED. THE CONTACT STATED WAS AWAITING INSPECTION BY THE INSURANCE COMPANY. THE MANUFACTURER THE DEALERSHIP WAS MADE OF AWARE OF THE FAILURE. THE VEHICLE FAILURE WAS NOT DIAGNOSED BY A DEALER OR INDEPENDENT MECHANIC. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE, HOWEVER NO ASSISTANCE WAS OFFERED. THE APPROXIMATE FAILURE MILEAGE WAS 57,000.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

June 3, 2020 **NHTSA ID NUMBER: 11327143**

**Components: ENGINE, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11327143

**Incident Date** May 4, 2020

**Consumer Location** MANVEL, TX

**Vehicle Identification Number** JTMZFREV1HJ****

**Summary of Complaint**

**CRASHNo**

**FIREYes**

**INJURIES0**

**DEATHS0**

I HAD OWN 2017 TOYOTA RAV4LE FOR LESS THAN 3 YEARS AND LESS THEN 25000 MILE, WE FOLLOW THE INSTRUCTIONS TO HAVE A SCHEDULE MAINTENANCE. WE HAVE NEVER EXPERIENCE ANY PROBLEM AT ALL, OVERALL IT WAS GOOD DRIVING CAR. HOWEVER, ON 5/4/2020, I PARKED MY CAR AT PARKING LOT, TURNED OFF ENGINE. I HEARD GENTLE CLICK CLICK TWO SOUND, DO NOT REALIZED IT WAS FROM MY CAR (OTHER PEOPLE WAS UNLOAD STUFF). I OPEN THE DRIVER SIDE DOOR GET READY TO OFF MY CAR AND GO. I SMELLED RUBBER BURNING. I LOOK AROUND AND SEE MY ENGINE HAD LIGHT SMOKE CAME OUT FROM ENGINE, THEN BECAME DARKER SMOKE, AND FOLLOW BY FIRE. I CALLED 911, THEY SEND A FIRE DEPARTMENT TO PUT OFF THE FIRE FOR ME. MY TOYOTA RAV4 LE WAS ALL BURNED BY UNKNOWN REASON. I DO NOT SMOKE, I PAID OFF MY CAR AND I HAVE NO FINANCIAL GAIN TO HAVE CAR BURN. I JUST WANT TO WARNING OTHER OWNER, IT COULD HAPPENED TO YOU, I

WAS LUCKY TO BE ABLE TO WORK OUT FROM MY BURNING VEHICLE. MY CAR
WAS UNDER WARRANTY, BUT TOYOTA DEALER STATED THAT THEY WOULD
NOT ABLE TO HONOR SUCH WARRANTY, ASKED ME CALL HEADQUARTER, I
TRIED TO EMAIL BUT AFTER I UPLOAD PICTURES AND IT WAS SUDDENLY
INTERCEPTED IN THE CLOUD-DISAPPEAR. I AM REPORT THIS INCIDENT TO
WARNING OTHERS. *TR

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

August 2, 2020 **NHTSA ID NUMBER: 11342773**

**Components: FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 11342773

**Incident Date** July 31, 2020

**Consumer Location** WEST MILFORD, NJ

**Vehicle Identification Number** JTMRJREV7HD****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0
WHEN STARTING AND PULLING AWAY FROM A STOP LIGHT AND TURNING, THE
CAR SUDDENLY STALLED IN A SUBURBAN SETTING. NO HYBRID BATTERY
POWER OR GAS POWER WAS AVAILABLE. ALL DASH BOARD LIGHTS CAME ON.
THIS WAS SUDDEN AND THERE WAS NO HESITATION ON ACCELERATION OR
INDICATIONS OF PROBLEMS PRIOR. IN TRAFFIC, HAD TO PUT THE CAR IN PARK

AND RESTART IT. WORKED OK AFTER THAT. THE CAR HAS 29,000 MILES AND IS
SERVICED REGULARLY.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | RAV4 | 2017 |

August 11, 2020 **NHTSA ID NUMBER: 11348663**

**Components: ENGINE**

**NHTSA ID Number:** 11348663

**Incident Date** August 7, 2020

**Consumer Location** LYONS, CO

**Vehicle Identification Number** JTMRJREV4HD****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0
TL* THE CONTACT OWNED A 2017 TOYOTA RAV4 HYBRID. THE CONTACT STATED
THAT WHILE DRIVING APPROXIMATELY 50 MPH, THE CHECK ENGINE LIGHT
SUDDENLY ILLUMINATED, WARNING MESSAGES BEGAN TO DISPLAY ON THE
DASH SCREEN; BEFORE WHITE SMOKE WAS PRESENT COMING FROM UNDER THE
HOOD OF THE VEHICLE. MOMENTS LATER FLAMES WERE COMING FROM THE
ENGINE COMPARTMENT. THE FIRE DEPARTMENT WAS CALLED TO THE SCENE
AND EXTINGUISHED THE FLAMES. DURING THE INCIDENT, THE VEHICLE WAS
DESTROYED AND TOWED AWAY. THE CAUSE OF THE FAILURE WAS NOT

DETERMINED. THE MANUFACTURER AND LOCAL DEALER LARRY MILLER TOYOTA (2465 48TH CT. BOULDER, CO 80301) WERE NOTIFIED OF THE INCIDENT. THE FAILURE MILEAGE WAS 66,500.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2017 |

## 2018 TOYOTA RAV4

August 22, 2018 **NHTSA ID NUMBER: 11121578**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11121578

**Incident Date** August 17, 2018

**Consumer Location** MINNEAPOLIS, MN

**Vehicle Identification Number** 2T3RFREV8JW****

**Summary of Complaint**

**CRASH** No

**FIRE** Yes

**INJURIES** 1

**DEATHS** 0

MY RAV4 CAUGHT FIRE IN THE MIDDLE OF THE NIGHT WHILE PARKED ON THE STREET IN FRONT OF MY HOUSE. IT HAD BEEN PARKED FOR 12+ HOURS. AFTER BURNING FOR ABOUT 10 MINUTES, IT EXPLODED WITH A FORCE SO GREAT THAT IT LIFTED THE CAR ONTO THE CURB, KNOCKED OVER A FIREFIGHTER, AND DAMAGED OUR BOAT PARKED 10 FEET ACROSS THE STREET. THE INSPECTOR FROM THE FIRE DEPARTMENT DETERMINED THE INITIAL FIRE WAS FROM FAULTY ELECTRICAL WIRING BUT SAID HE HAD NEVER SEEN A CAR EXPLODE IN

HIS 25 YEARS ON THE FORCE. TOYOTA CONDUCTED THEIR OWN INVESTIGATION AND AGREED IT WAS ELECTRICAL BUT COULD NOT DETERMINE FAULT DUE TO THE SEVERITY OF THE DAMAGE

**1 Affected Product**

## Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2018 |

October 1, 2018 **NHTSA ID NUMBER: 11132810**

**Components: ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11132810

**Incident Date** September 29, 2018

**Consumer Location** Unknown

**Vehicle Identification Number** 2T3BFREV9JW****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

WHILE DRIVING ON SATURDAY MORNING 9/29/18, I STOPPED AT A STOP LIGHT AND MY 2018 TOYOTA RAV4 LOST ALL ENGINE POWER WHILE IN TRAFFIC. THE COMPUTER VIDEO SCREEN SHOWED THE MESSAGE "CHARGING SYSTEM FAILURE\MALFUNCTION". I THEN ATTEMPTED TO RESTART THE VEHICLE AND IT DID NOT CRANK OVER, I WAITED A FEW SECONDS, MADE ANOTHER ATTEMPT , THE VEHICLE STARTED. I PULLED OVER AND PARKED THE VEHICLE, LOOKED UP THE ERROR MESSAGE IN THE CAR MANUAL AND IT INSTRUCTED ME THAT IT WAS A SERIOUS PROBLEM AND TO TAKE THE VEHICLE IMMEDIATELY TO THE NEAREST TOYOTA DEALER. I THEN TOOK THE VEHICLE TO MY LOCAL DEALER,

THEY RAN A VEHICLE DIAGNOSTIC REPORT, THEY FOUND NO ERROR MESSAGES OR VOLTAGE PROBLEMS WITH THE VEHICLE. THEY OFFERED NO REASON FOR THE LOSS OF VEHICLE POWER. THE SERVICE MANAGER STATED THAT THEY COULD ONLY DIAGNOSE THE VEHICLE SO FAR AND THAT THEY WOULD NEED "CORPORATE" TO SEND SOMEONE OUT TO DO FURTHER DIAGNOSTICS ON THE BLACK BOX. ON 10/1/18, I OPENED A PROBLEM REPORT WITH TOYOTA USA AND WAS GIVEN A CASE#.

.

**1 Affected Product**

| Vehicle | | |
|---|---|---|
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2018 |

January 2, 2019 **NHTSA ID NUMBER: 11164698**

**Components: ELECTRICAL SYSTEM, ENGINE, FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 11164698

**Incident Date** December 24, 2018

**Consumer Location** ALPHARETTA, GA

**Vehicle Identification Number** JTMWFREV1JJ****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0

AFTER PURCHASING OUR BRAND-NEW 2018 RAV4 FROM AUTHORIZED TOYOTA DEALER, WE WERE HEADING BACK HOME. ON OUR WAY, WE NOTICED BURNING SMELL FOLLOWED BY BLACK SMOKE FILLED FRONT SIDE OF THE CABIN. I

QUICKLY MOVED MY CAR TO THE RIGHT SIDE PARKING LOT. WHILE CHANGING THE LANE I COULD NOT EVEN SEE THE RIGHT MIRROR BECAUSE OF THE BLACK SMOKE IN THE CABIN. AS SOON AS I PARKED THE CAR AND WE GOT OFF THE CAR, WITHIN A FEW SECONDS FLAMES FROM THE HOODS WERE NOTICED I CALLED EMERGENCY SERVICE (911) AND TO OUR DISBELIEF TO WATCH OUR NEW CAR BURNING IN FRONT OF US. IT WAS ONLY 15 MINS DRIVE FROM DEALER WHEN WE THE INCIDENT HAPPENED. IT TOOK ONLY 10 MINS TO SEE MY CAR WAS DESTROYED BY FLAMES. I COULD NOT GET ANYTHING OUT FROM FRONT OR BACK SEATS

**1 Affected Product**

| Vehicle | | |
| --- | --- | --- |
| MAKE | MODEL | YEAR |
| TOYOTA | RAV4 | 2018 |

May 2, 2019 **NHTSA ID NUMBER: 11205340**

**Components: ELECTRICAL SYSTEM, POWER TRAIN**

**NHTSA ID Number:** 11205340

**Incident Date** April 2, 2019

**Consumer Location** SAN DIEGO, CA

**Vehicle Identification Number** 2T3ZFREV1JW****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

MY 2018 TOYOTA RAV4 HAS STALLED 5 TIMES WHILE DRIVING ON CITY STREETS IN MOVING TRAFFIC, FIRST TIME IN FEB 2019 WHILE DRIVING HOME FROM WORK, IN APRIL THREE TIMES WHILE DRIVING TO WORK AND ONE TIME WHILE

DRIVING HOME FROM WORK(RUSH HOUR). ALL DOCUMENTED WITH TOYOTA. OCCURS WHEN I TAKE MY FOOT OFF THE GAS WHILE DRIVING, AND DIFFICULTY RESTARTING AFTER IT STALLS WITH LOSS OF POWER AND SPUTTERING. 'CHARGING SYSTEM MALFUNCTION' WARNING MSG APPEARED ON DASHBOARD(I TOOK PHOTO AND EMAILED TO TOYOTA). I FOLLOWED INSTRUCTIONS IN 2018 TOYOTAL RAV4 OWNER'S MANUAL "STOP THE CAR IMMEDIATELY...CONTINUING TO DRIVE THE VEHICLE MAY BE DANGEROUS". HAD CAR TOWED TO TOYOTA IMMEDIATELY. 3 TROUBLE CODES WERE RECORDED P1603(ENGINE STALL), P1604 STARTABILITY MALFUNCTION, AND P1605(ROUGH IDLING), HOWEVER THEY WERE UNABLE TO DETERMINE ROOT CAUSE OF STALLING AND REFUSED TO KEEP MY CAR TO DO FURTHER ANALYSIS DESPITE THE FACT THAT I TOLD THEM I DID NOT FEEL SAFE DRIVING VEHICLE, AND MY CAR IS STILL UNDER COMPREHENSIVE WARRANTY COVERAGE. I CONTACTED CORPORATE, AND THEY RESTATED DEALER CONCLUSIONS AND WOULD NOT ALLOW ME TO SPEAK TO A FIELD TECH SPECIALIST. I THEN EMAILED AND WROTE A LETTER TO VP SALES OF TOYOTA, ANDREW GILLELAND. REP FROM EXECUTIVE OFFICE CALLED ME. I ASKED FOR TOYOTA TO PROVIDE ME WITH EITHER TRANSPORTATION ASSISTANCE AND A NO COST-TO-ME EXTENDED COMPREHENSIVE WARRANTY UNTIL THE UNDERLYING CAUSE IS DETERMINED AND WITHOUT FURTHER STALLING INCIDENCES, OR A REPLACEMENT VEHICLE. HE REFUSED, DESPITE ALL THE SIGNIFICANT POTENTIALLY DANGEROUS SAFETY ISSUES IN A VEHICLE WITH LESS THAN 9,200 MILES. TOYOTA DOES NOT APPEAR TO BE CONCERNED WITH RELIABILITY, PEACE OF MIND, AND MOST OF ALL SAFETY. I HAVE A CASE # WITH TOYOTA. I RECENTLY DISCOVERED THERE ARE SEVERAL OTHER REPORTS ON THIS SITE WITH SAME STALLING ISSUES AS MY CAR.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2018 |

May 9, 2019 **NHTSA ID NUMBER: 11206563**

**Components: ENGINE**

**NHTSA ID Number:** 11206563

**Incident Date** May 8, 2019

**Consumer Location** JOPLIN, MO

**Vehicle Identification Number** 2T3JFREV8GW****

**Summary of Complaint**

**CRASH**No

**FIRE**Yes

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNED A 2018 TOYOTA RAV4. THE CONTACT STATED AFTER PARKING AND RETURNING TO THE VEHICLE IN THEIR GARAGE, SMOKE WAS SEEN COMING FROM THE VEHICLE. THE CONTACT QUICKLY ENTERED THE VEHICLE AND REVERSED THE VEHICLE OUT OF THE GARAGE. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A POLICE REPORT WAS FILED. NO INJURIES WERE SUSTAINED. THE VEHICLE WAS DESTROYED BY THE FIRE. THE CONTACT CALLED FRANK FLETCHER TOYOTA (2209 S RANGELINE RD, JOPLIN, MO 64804 (417) 622-5447) AND WAS INFORMED THAT SINCE THE VEHICLE WAS MOVED THEY COULD OFFER NO ASSISTANCE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 48,000. THE VIN WAS NOT AVAILABLE.

**1 Affected Product**

| Vehicle | | |
| --- | --- | --- |
| **MAKE** | **MODEL** | **YEAR** |
| TOYOTA | RAV4 | 2018 |

November 10, 2019 **NHTSA ID NUMBER: 11279255**

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11279255

**Incident Date** November 10, 2019

**Consumer Location** EAST NORRITON, PA

**Vehicle Identification Number** JTMRFREV9JJ****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE DRIVING THE CAR SHUTTERED THEN STOPPED WHILE IN TRAFFIC AND
CHECK ENGINE LIGHT AND CHARGING SYSTEM MALFUNCTION ERROR MESSAGE
APPEARED. I COASTED OVER TO SIDE OF ROAD. RESTARTED CAR TO GET HOME
AND THIS SAME THING HAPPENED 3 MORE TIMES UNTIL I GOT HOME AND
PARKED IT. WE RAN THE CAR IN THE DRIVEWAY AND THE SAME THING
HAPPENED 3 MORE TIMES. SINCE IT IS SUNDAY AFTERNOON WILL HAVE TO
CALL TOYOTA ON MONDAY. AFTER READING ONLINE ABOUT SIMILAR
ISSUES...I'M AFRAID TO DRIVE THE CAR AGAIN. IT SEEMS TOYOTA HAS NO FIX
OR HAS ACKNOWLEDGED IT AS A PROBLEM.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2018 |

110.    Toyota has long-standing and material knowledge of the Battery Defect. Upon information and belief, Toyota through (1) its own records of customers' complaints, (2) dealership repair records, (3) access to monitoring and review of records from the National Highway Traffic Safety Administration and its aforesaid database, (4) warranty and post-warranty claims, (5) and pre-sale durability testing and part sales.

111.    Toyota routinely monitors the internet for complaints similar in substance to those quoted below. Its customer relations department routinely monitors the internet for customer complaints, and it retains the services of third parties to do the same. Further, Toyota's customer relations division regularly receives and responds to customer calls concerning, *inter alia*, product defects. Through these sources, Toyota knew about the Battery Defect. NHTSA complaints also indicate Toyota's knowledge of the Battery Defect and the potential danger it poses to passengers and the general public.

112.    Moreover, Toyota should have known about the Battery Defect because its customer relations department, which interacts with Toyota-authorized service technicians in order to identify potentially widespread vehicle problems and assist in diagnosing vehicle issues, has received numerous reports that the Battery Defect causes a sudden loss of power and fire. Toyota's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

113.    Toyota's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. Toyota dictates that when a repair is made under warranty (or warranty coverage is

requested), service centers must provide Toyota with detailed documentation. Toyota also requires service centers to save the broken parts in case Toyota audits the dealership, or otherwise acts to verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs because Toyota withholds payment for the repair if the complaint, cause, and correction are not sufficiently described.

114.   Toyota's knowledge can also be inferred because several NHTSA complaints reference that the manufacturer—Toyota—has been notified of consumers' concerns about the Battery Defect.

115.   Toyota's acts and omissions have unnecessarily put the safety of Class members and the public in jeopardy. Reliable operation of a vehicle's battery and engine is necessary to safely operate the Class Vehicles.

116.   Further, because of Toyota's unfair, deceptive, and/or fraudulent business practices, owners, and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. Toyota undertook these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

117.   Had Plaintiffs known about the Battery Defect at the time of purchase or lease, they would not have bought the Vehicle, or they would have paid substantially less for the Vehicle.

118.   As a result of the Battery Defect and the monetary costs associated with attempting to repair it, Plaintiffs and the other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct. Accordingly, Plaintiffs bring this action to redress Toyota's violations of state consumer protection statutes and its breaches of express and implied warranties on the Class Vehicles.

### 1.     Toyota's Warranty-Related Practices

119.     Toyota issued a Limited New Vehicle Warranty with each Class Vehicle.

120.     Under the Limited New Vehicle Warranty, Toyota agreed to repair reported defects

within the earlier of 3 years or 36,000 miles. The warranty manual provides that:

> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" on pages 14-15.

> Coverage is for 36 months or 36,000 miles, whichever occurs first, with the exception of wheel alignment and wheel balancing, which are covered for 12 months or 20,000 miles, whichever occurs first.

121.     Toyota instructs vehicle owners and lessees to bring their vehicles to a certified

dealership for warranty repairs. Many owners and lessees have presented Class Vehicles to

Toyota-certified dealerships with complaints related to the Battery Defect.

122.     Toyota has evaded its warranty obligations by (1) failing to tell consumers that the

Class Vehicles are defective and (2) refusing to perform repairs to correct the Battery Defect.

## V     TOLLING OF STATUTES OF LIMITATIONS

**Discovery Rule**

123.     Toyota's knowing and active concealment and denial of the facts alleged herein act

to toll any applicable statute(s) of limitations. Plaintiffs and other Class members could not have

reasonably discovered the true, latent nature of the Battery Defect until shortly before commencing

this class-action litigation.

124.     Plaintiffs and Class members had no realistic ability to discover the presence of the

Battery Defect in the Class Vehicles within the applicable statute of limitations and could not have

discovered through the exercise of reasonable diligence that Toyota was concealing the Battery

Defect in the Class Vehicles and misrepresenting the safety, quality and reliability of the Class Vehicles.

125.    Any statutes of limitation otherwise applicable to any claims asserted herein have thus been tolled by the discovery rule.

**Fraudulent Concealment**

126.    All applicable statutes of limitation have also been tolled by Toyota's knowing, active and ongoing fraudulent concealment of the facts alleged herein. Even after Plaintiffs and other Class members contacted Toyota and/or its authorized dealers to repair the Battery Defect, Toyota and/or its dealers repeatedly and consistently told them the Class Vehicles were not defective.

127.    As a result of Toyota's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**Estoppel**

128.    Toyota has had, and continues to have, a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles, including the facts that the Class Vehicles require costly repairs, pose safety concerns, and have a diminished resale value.

129.    Instead, Toyota actively concealed the true character, quality, and nature of the Class Vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the Class Vehicles.

130.    Plaintiffs and Class members have reasonably relied upon Toyota's knowing and affirmative misrepresentations and/or active concealment of these facts.

131.    Based on the foregoing, Toyota is estopped from relying on any statutes of limitation in defense of this action.

## VI      CLASS ALLEGATIONS

132.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

133.    In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiffs seek to represent the following individual State Classes:

**Michigan Class**

All persons or entities in the State of Michigan who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Michigan.

**California Class**

All persons or entities in the State of California who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of California.

**Texas Class**

All persons or entities in the State of Texas who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Texas.

**Florida Class**

All persons or entities in the State of Florida who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Florida.

**Illinois Class**

All persons or entities in the State of Illinois who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Illinois.

**New Hampshire Class**

All persons or entities in the State of New Hampshire who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of New Hampshire.

**Missouri Class**

All persons or entities in the State of Missouri who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Missouri.

134.    Together, the Nationwide Class, and the State Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Toyota, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

135.    **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the Toyota's sole possession and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in states that are the subject of the Class.

136.    **Existence and Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, whether:

    a)    The Class Vehicles were sold with the Battery Defect, and any and all

        related defects;

    b)  Toyota knew about the Battery Defect but failed to disclose it and its consequences to its customers;

    c)  A reasonable consumer would consider the Battery Defect or its consequences to be material;

    d)  Toyota should be required to disclose the Battery Defect's existence and its consequences; and

    e)  Toyota's conduct violates the statutory and common-law provisions set forth in this Complaint.

137.   **Typicality:** All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased the Vehicles with the same defect as other Class members. Furthermore, Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Toyota's wrongful conduct. Plaintiffs advance the same claims and legal theories on behalf of themselves and all absent Class members.

138.   **Adequacy:** Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained counsel who are competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel are well-suited to fairly and adequately protect the interests of the Class.

139.   **Superiority:** A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Toyota's conduct. It would be virtually impossible for Class members on an individual basis to effectively redress the wrongs

done to them. Even if Class members could afford such individual litigation, the courts cannot. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, individual Class members can be readily identified and notified based on, *inter alia*, Toyota's vehicle identification numbers, warranty claims, registration records, and database of complaints.

140.    Toyota has acted, and/or refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VII    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class, or alternatively, the Michigan State Class, the California State Class, the Texas State Class, the Florida State Class, the Illinois State Class, the New Hampshire State Class, and the Missouri State Class**

### COUNT I

### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

**(By Plaintiffs against Defendants TMS, TMNA, and TEMA on behalf of the Nationwide Class or, alternatively, by Plaintiff Murphy against Defendants TMS, TMNA, and TEMA on behalf of the Michigan State Class, by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California State Class, by Plaintiff Flowers against all Defendants on behalf of the Texas State Class, by Plaintiff Guevara against Defendants TMS, TMNA, and TEMA on behalf of the Florida State Class, by Plaintiff Krukowski against Defendants TMS, TMNA, and TEMA on behalf of the Illinois State Class, by Plaintiff Woodman against Defendants TMS, TMNA, and TEMA on behalf of the New Hampshire State Class, and by Plaintiff Huchteman against Defendants TMS, TMNA ,and TEMA on behalf of the Missouri State Class)**

141.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

142.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the Michigan, California, Texas, Florida, Illinois, New Hampshire, and Missouri State Classes.

143.   Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

144.   Toyota is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

145.   The Class Vehicles, including Plaintiffs' vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

146.   Toyota's 3 year/36,000 mile limited warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

147.   Toyota breached its express warranties by:

    a) selling and leasing Class Vehicles with batteries that are defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

    b) refusing and/or failing to honor Plaintiffs' express warranties by repairing or replacing, free of charge, the battery causing the failure of the electrical system and the engine in the Class Vehicles.

148.   Plaintiffs and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

149.   Toyota's breach of express warranties has deprived Plaintiffs and the other Class members of the benefit of their bargain.

150.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

151.    Toyota has been given reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs and the other Class members are not required to do so because affording Toyota a reasonable opportunity to cure its breach of written warranties was, and is, futile. Toyota has long been on notice of the alleged defect from complaints and service requests it has received from Class members, as well as from their own warranty claims, customer complaint data, and/or parts sales data, and has made clear from its actions it has no intention of resolving the defect.

152.    As a direct and proximate cause of Toyota's breach of its written warranties, Plaintiffs and Class members sustained damages and other losses in an amount to be determined at trial. Toyota's conduct damaged Plaintiffs and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## COUNT II

## FRAUDULENT CONCEALMENT

**(By Plaintiffs against Defendants TMS, TMNA, and TEMA on behalf of the Nationwide Class or, alternatively, by Plaintiff Murphy against Defendants TMS, TMNA, and TEMA on behalf of the Michigan State Class, by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California State Class, by Plaintiff Flowers against all Defendants on behalf of the Texas State Class, by Plaintiff Guevara against Defendants TMS, TMNA, and TEMA on behalf of the Florida State Class, by Plaintiff Krukowski against Defendants TMS, TMNA, and TEMA on behalf of the Illinois State Class, by Plaintiff Woodman against Defendants TMS, TMNA, and TEMA on behalf of the New**

Hampshire State Class, and by Plaintiff Huchteman against Defendants TMS, TMNA ,and
TEMA on behalf of the Missouri State Class)

153.    Plaintiffs and the Class incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

154.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide

Class or, alternatively, on behalf of the Michigan, California, Texas, Florida, Illinois, New

Hampshire, and Missouri State Classes.

155.    Toyota concealed and suppressed material facts concerning the performance and

quality of the Class Vehicles—namely, the Battery Defect—and the quality of the Toyota brand.

Specifically, Toyota knew (or should have known of) the Battery Defect but failed to disclose it

prior to or at the time it sold or leased Class Vehicles to consumers. Toyota did so to boost sales

and leases of Class Vehicles.

156.    Plaintiffs and Class Members had no way of knowing that Toyota's representations

were false and gravely misleading, or that Toyota had omitted imperative details. Plaintiffs and

Class Members did not, and could not, unravel Toyota's deception on their own.

157.    Toyota had a duty to disclose the true performance of Class Vehicles and the

Battery Defect because knowledge thereof and the details related thereto were known and/or

accessible only to Toyota; Toyota had superior knowledge and access to the facts; and knew the

facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Toyota also had

a duty to disclose because they made many general affirmative representations about the qualities

of the Class Vehicles.

158.    On information and belief, Toyota still has not made full and adequate disclosures,

and continues to defraud consumers by concealing material information regarding the Battery

Defect and the performance and quality of Class Vehicles.

159.    Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. The actions of Plaintiffs and Class Members were justified. Toyota was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

160.    Plaintiffs and the Class relied upon Toyota's representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

161.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the price paid for their Class Vehicles. Plaintiffs and Class Members would have paid less for Class Vehicles had they known about the Battery Defect, or they would not have purchased or leased Class Vehicles at all.

162.    Accordingly, Toyota is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

163.    Toyota's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being, to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

164.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Toyota has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Battery Defect. Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and Class Members were not receiving trucks of the quality, nature,

fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

165.    Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## COUNT III

## UNJUST ENRICHMENT

**(By Plaintiffs against Defendants TMS, TMNA, and TEMA on behalf of the Nationwide Class or, alternatively, by Plaintiff Murphy against Defendants TMS, TMNA, and TEMA on behalf of the Michigan State Class, by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California State Class, by Plaintiff Flowers against all Defendants on behalf of the Texas State Class, by Plaintiff Guevara against Defendants TMS, TMNA, and TEMA on behalf of the Florida State Class, by Plaintiff Krukowski against Defendants TMS, TMNA, and TEMA on behalf of the Illinois State Class, by Plaintiff Woodman against Defendants TMS, TMNA, and TEMA on behalf of the New Hampshire State Class, and by Plaintiff Huchteman against Defendants TMS, TMNA ,and TEMA on behalf of the Missouri State Class)**

## (IN THE ALTERNATIVE)

166.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

167.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the Michigan, California, Texas, Florida, Illinois, New Hampshire, and Missouri State Classes.

168.    Toyota has long known that its 12V Batteries have a propensity to short, causing loss of power, vehicle stalling, smoke and fire, posing a serious safety risk, which it concealed and failed to disclose to Plaintiffs and Class Members.

169.    As a result of its fraudulent acts and omissions related to the defective Batteries, Toyota obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

170.    Toyota appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Battery Defect, paid a higher price for their vehicles which actually had lower values.  Toyota also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

171.    It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

172.    Toyota's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

173.    As a result of Defendants' unjust enrichment, Plaintiffs and Class Members have suffered damages.

174.    Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of its unjust conduct.

175.    Additionally, Plaintiffs seek injunctive relief to compel Defendants to offer, under warranty, remediation solutions that Defendants identify. Plaintiffs also seek injunctive relief enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendants from selling the Class Vehicles with the misleading

information; compelling Defendants to provide Class members with a replacement components that do not contain the defects alleged herein; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**B.**      **Claims Brought on Behalf of the Michigan Class**

### COUNT IV

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

### (Mich. Comp. Laws § 445.901, *et seq.*)

**(Brought by Plaintiff Murphy against Defendants TMS, TMNA, and TEMA
on behalf of the Michigan Class)**

176.     Plaintiff Murphy and the Michigan Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

177.     Toyota misrepresented the safety of the Class Vehicles after learning of their defects with the intent that Plaintiff Murphy rely on those representations in her decision regarding the lease of her Class Vehicle. Toyota also misrepresented the comprehensive nature of its new vehicle warranties and the scope of protection afforded under the warranties.

178.     Plaintiff Murphy did, in fact, rely on such representations in deciding to lease her Class Vehicle.

179.     Through those misleading and deceptive statements and false promises, Defendants TMS, TMNA, and TEMA violated the Michigan Consumer Protection Act.

180.     The Michigan Consumer Protection Act applies to Toyota's transactions with Plaintiff because Toyota carried out its deceptive scheme in Michigan and that scheme affected Plaintiff Murphy and the Michigan Class.

181.    Toyota also failed to advise NHTSA and the public regarding its knowledge about the Battery Defect.

182.    Plaintiff Murphy relied on Toyota's silence as to known defects in connection with her decision regarding the lease of her Class Vehicle.

183.    As a direct and proximate result of Toyota's deceptive conduct and violation of the Michigan Consumer Protection Act, Plaintiff Murphy and the Michigan Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT V

## BREACH OF EXPRESS WARRANTY

### (Mich. Comp. Laws § 440.2313)

### (Brought by Plaintiff Murphy against Defendants TMS, TMNA, and TEMA on behalf of the Michigan Class)

184.    Plaintiff Murphy and the Michigan Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

185.    Plaintiff Murphy brings this cause of action on behalf of the Michigan Class.

186.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(c).

187.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

188.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

189.    Toyota expressly warranted that the Class Vehicles were of high quality, and at a minimum, would work properly and safely.

190.   Toyota breached the warranty by knowingly selling the Class Vehicles though they had dangerous defects.

191.   Plaintiff Murphy and the Michigan Class have been damaged as a direct and proximate result of Toyota's breaches of warranty in that her Class Vehicle was and is worth far less than the cost Plaintiff Murphy and the Michigan Class paid to lease the vehicle, which was reasonably foreseeable to Toyota.

## COUNT VI

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Mich. Comp. Laws § 440.2314)

### (Brought by Plaintiff Murphy against Defendants TMS, TMNA, and TEMA on behalf of the Michigan Class)

192.   Plaintiff Murphy and the Michigan Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

193.   Toyota impliedly warranted that the Class Vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use—transporting the driver and passengers in reasonably safety during normal operation, and without unduly endangering them or members of the public. Toyota breached the warranty by knowingly selling the Class Vehicles though they possessed dangerous defects.

194.   As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Toyota, which Plaintiff Murphy leased, including the Battery Defect.

195.   The Battery Defect existed at the time the vehicles left Toyota's manufacturing facilities and at the time the Plaintiff Murphy and Michigan Class members purchased or leased their vehicles. Furthermore, because of the Battery Defect, Plaintiff Murphy and the Michigan

Class did not receive the benefit of their bargain and her vehicle and the other Class Vehicles have suffered a diminution in value.

196.    As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff Murphy and the other Michigan Class members have been damaged in an amount to be proven at trial.

## C.    Claims Brought on Behalf of the California Class

### COUNT VII

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")

### (Cal. Civ. Code § 1750, et seq.)

### (Brought by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California Class)

197.    Plaintiff Lavoot and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

198.    Toyota is a "person" as that term is defined in California Civil Code § 1761(c).

199.    Plaintiff Lavoot and the California Class members are "consumers" as that term is defined in California Civil Code § 1761(d).

200.    Toyota engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff Lavoot and California Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

- (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits, or quantities which they do not have,

- 95 -

or that a person has a sponsorship, approval, status, affiliation, or
connection which he or she does not have;

- (a)(7) Representing that goods or services are of a particular
  standard, quality, or grade, or that goods are of a particular style or
  model, if they are of another; and

- (a)(9) Advertising goods and services with the intent not to sell them
  as advertised.

201.    Toyota's unfair or deceptive acts or practices occurred repeatedly in its trade or
business, were capable of deceiving a substantial portion of the purchasing public and imposed a
serious safety risk on the public.

202.    Toyota knew that the Class Vehicles' battery systems were defectively designed or
manufactured, would fail prematurely, and were not suitable for their intended use.

203.    Toyota had the duty to Plaintiff Lavoot and the California Class members to
disclose the Battery Defect and the defective nature of the Class Vehicles because:

a)      Toyota was in a superior position to know the true state of facts about the
Battery Defect and associated repair costs in the Class Vehicles;

b)      Plaintiff Lavoot and the California Class members could not reasonably
have been expected to learn or discover that the Class Vehicles had
dangerous defects until manifestation of the defects;

c)      Toyota knew that Plaintiff Lavoot and the California Class members could
not reasonably have been expected to learn about or discover the Battery
Defect and its associated repair costs; and

d)      Toyota actively concealed the Battery Defect, its causes, and resulting

effects, by asserting to Plaintiff Lavoot and California Class members that

their battery systems failed for reasons other than the Battery Defect.

204.    In failing to disclose the Battery Defect and the associated safety risks and repair

costs resulting from it, Toyota has knowingly and intentionally concealed material facts and

breached its duty to disclose.

205.    The facts Toyota concealed or did not disclose to Plaintiff Lavoot and the California

Class members are material in that a reasonable consumer would have considered them to be

important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff

Lavoot and the California Class known the Class Vehicles were defective, they would not have

purchased the Class Vehicles or would have paid less for them.

206.    Plaintiff Lavoot provided Toyota with notice of its CLRA violations pursuant to

California Civil Code § 1782(a) by the filing of the complaint June 17, 2021

207.    Toyota's fraudulent and deceptive business practices proximately caused injuries

to Plaintiff Lavoot and the other California Class members.

208.    Therefore, Plaintiff Lavoot and the California Class members seek equitable and

monetary relief under the CLRA.

## COUNT VIII

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code § 17200, et seq.)

### (Brought by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California Class)

209.    Plaintiff Lavoot and the California Class incorporate by reference each preceding

and succeeding paragraph as though fully set forth at length herein.

- 97 -

210.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

211.    Toyota has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Lavoot and the California Class members that the Class Vehicles suffer from the Battery Defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Toyota should have disclosed this information because it was in a superior position to know the true facts related to the Battery Defect, and Plaintiff Lavoot and California Class members could not have been reasonably expected to learn or discover these true facts.

212.    The Battery Defect constitutes a safety issue triggering Toyota's duty to disclose.

213.    By its acts and practices, Toyota has deceived Plaintiff Lavoot and is likely to have deceived the California Class members and the general public. In failing to disclose the Battery Defect and suppressing other material facts from Plaintiff Lavoot and other California Class members, Toyota breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiff Lavoot and the California Class members. Toyota's omissions and acts of concealment pertained to information material to Plaintiff Lavoot and other California Class members, as it would have been to all reasonable consumers.

214.    The injuries Plaintiff Lavoot and the California Class members suffered greatly outweigh any potential countervailing benefit to consumers or to competition, and they are not injuries that Plaintiff Lavoot and the Class members could or should have reasonably avoided.

215.    Toyota's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

216.    Plaintiff Lavoot and the California Class members seek to enjoin Toyota from further unlawful, unfair, and/or fraudulent acts or practices, to obtain restitutionary disgorgement of all monies and revenues Toyota has generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## COUNT IX

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

### (Brought by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California Class)

217.    Plaintiff Lavoot and the California Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

218.    California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

219.    Toyota caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Toyota should have known to

be untrue and misleading to consumers, including Plaintiff Lavoot and the California Class members.

220.    Toyota has violated section 17500 because its misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles were material and likely to deceive a reasonable consumer.

221.    Plaintiff Lavoot and the California Class members have suffered injuries in fact, including the loss of money or property, resulting from Toyota's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff Lavoot and the California Class members relied on Toyota's misrepresentations and/or omissions with respect to the Class Vehicles' safety and reliability. Toyota's representations were untrue because it distributed the Class Vehicles with the Battery Defect. Had Plaintiff Lavoot and the California Class members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiff Lavoot and the California Class members did not receive the benefit of their bargain.

222.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Toyota's business. Toyota's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

223.    Plaintiff Lavoot, individually and on behalf of the California Class members, request that the Court enter such orders or judgments as may be necessary to enjoin Toyota from continuing its unfair, unlawful, and/or deceptive practices, and restore to Plaintiff Lavoot and the California Class members any money Toyota acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT X**

**BREACH OF EXPRESS WARRANTY**

**(Based on California Law)**

**(Brought by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California Class)**

224.    Plaintiff Lavoot and the California Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

225.    Toyota provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the parties' bargain. Accordingly, Toyota's warranties are express warranties under state law.

226.    Toyota distributed the defective parts causing the Battery Defect in the Class Vehicles, and said parts are covered by Toyota's warranties granted to all purchasers and lessees of the Class Vehicles.

227.    Toyota breached these warranties by selling and leasing Class Vehicles with the Battery Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

228.    Plaintiff Lavoot notified Toyota of its breach within a reasonable time, and/or she was not required to do so because affording Toyota a reasonable opportunity to cure its breaches would have been futile. Toyota also knew about the Battery Defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

229.    As a direct and proximate cause of Toyota's breach, Plaintiff Lavoot and the California Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles

- 101 -

suffered a diminution in value. Plaintiff Lavoot and the California Class members have incurred

and will continue to incur costs related to the Battery Defect's diagnosis and repair.

230.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is

unconscionable and unenforceable under the circumstances here. Specifically, Toyota's warranty

limitations are unenforceable because it knowingly sold a defective product without giving notice

to Plaintiff Lavoot or California Class Members.

231.    The time limits contained in Toyota's warranty period were also unconscionable

and inadequate to protect Plaintiff Lavoot and the California Class members. Among other things,

Plaintiff Lavoot and the California Class members had no meaningful choice in determining these

time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining

power existed between Toyota and the California Class members because Toyota knew or should

have known that the Class Vehicles were defective at the time of sale and would fail well before

their useful lives.

232.    Plaintiff Lavoot and the California Class members have complied with all

obligations under the warranty, or otherwise have been excused from performance of said

obligations as a result of Toyota's conduct.

### COUNT XI

### BREACH OF IMPLIED WARRANTY

#### (Based on California Law)

#### (Brought by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California Class)

233.    Plaintiff Lavoot and the California Class members incorporate by reference each

preceding and succeeding paragraph as though fully set forth at length herein.

234.    Toyota was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Toyota knew or had reason to know of the specific use for which the Class Vehicles were purchased.

235.    Toyota provided Plaintiff Lavoot and the California Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the Class Vehicles suffered from the Battery Defect at the time of sale. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

236.    Toyota implied that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their battery systems manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for the purpose for which they were installed; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

237.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Lavoot and the California Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

238.    Toyota's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## COUNT XII

## COMMON LAW FRAUDULENT CONCEALMENT

### (Based on California Law)

### (Brought by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California Class)

239.    Plaintiff Lavoot and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

240.    Toyota made material omissions concerning a presently existing or past fact. For example, Toyota did not fully and truthfully disclose to its customers the true nature of the Battery Defect, which was not readily discoverable to them until years later. As a result, Plaintiff Lavoot and the California Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the Battery Defect and all problems resulting from it.

241.    Toyota made these statements with knowledge of their falsity, intending that Plaintiff Lavoot and the California Class members rely on them.

242.    As a result of these omissions and concealments, Plaintiff Lavoot and the California Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

243.    Plaintiff Lavoot and the California Class members reasonably relied on these omissions and suffered damages as a result.

## COUNT XIII

## VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY

### (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)

### (Brought by Plaintiff Lavoot against Defendants TMS, TMNA, and TEMA on behalf of the California Class)

244.    Plaintiff Lavoot and the California Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

245.    At all relevant times hereto, Toyota was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Toyota knew or should have known of the specific use for which the Class Vehicles were purchased.

246.    Toyota provided Plaintiff Lavoot and the California Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale.

247.    The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Battery Defect.

248.    Toyota impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation—while the Class Vehicles were being operated.

249.    Contrary to the applicable implied warranties, the Class Vehicles were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the Battery Defect.

250.    Toyota's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**D.**     **Claims Brought on Behalf of the Texas Class**

## COUNT XIV

## VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – CONSUMER

## PROTECTION ACT

**(Tex. Bus. & Com. Code §§ 17.41, *et seq.*)**

**(Brought by Plaintiff Flowers against all Defendants on behalf of the Texas Class)**

251.     Plaintiff Flowers and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

252.     Plaintiff Flowers brings this cause of action on behalf of herself and the Texas Class.

253.     Plaintiff Flowers and the Texas Class are individuals, partnerships, or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), *see* Tex. Bus. & Com. Code § 17.41, and are therefore "consumers," pursuant to Texas Business and Commercial Code § 17.45(4). Toyota is a "person" within the meaning of Texas Business and Commercial Code § 17.45(3).

254.     Toyota is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Texas Business and Commercial Code § 17.46(a).

255.     The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

256.    In the course of their business, Toyota knew that the Class Vehicles' battery systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use. Yet Toyota concealed and suppressed material facts concerning the Class Vehicles, the Battery Defect, and its propensity to cause battery and engine failure. Toyota accomplished this by denying the existence of the Battery Defect and misrepresenting that battery failure would not occur until after diagnostic trouble codes are registered by the vehicle's engine control module.

257.    Toyota thus violated the Texas DTPA by, at minimum, representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising the Class Vehicles with the intent not to sell them as advertised; and omitting material facts in describing the Class Vehicles.

258.    Toyota engaged in misleading, false, unfair, and deceptive acts or practices that violated the Texas DTPA by failing to disclose and actively concealing the nature of the Battery Defect.

259.    Toyota owed Plaintiff Flowers and the Texas Class members a duty to disclose the existence of the Battery Defect because:

    a)    Toyota was in a superior position to know the true state of facts about the Defect and associated repair costs in the Class Vehicles;

    b)    Plaintiff Flowers and the Texas Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

    c)    Toyota knew that Plaintiff Flowers and the Texas Class members could not reasonably have been expected to learn about or discover the Defect and its associated repair costs; and

    d)    Toyota actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiff Flowers and Texas Class members that their battery systems failed for reasons other than the Defect.

260.    Whether or not a vehicle's battery systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff Flowers and the Texas Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective battery systems.

261.    Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff Flowers, about the safety and reliability of the Class Vehicles.

262.    Plaintiff Flowers and the Texas Class suffered ascertainable loss and actual damages as a direct and proximate result of Toyota's misrepresentations and its concealment of and failure to disclose material information. Plaintiff Flowers and the Texas Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated or would have paid significantly less for them. Plaintiff Flowers also suffered diminished value of her vehicle, as well as lost or diminished use.

263.    The omissions and acts of concealment by Toyota pertained to information that was material to Plaintiff Flowers and the Texas Class members, as it would have been to all reasonable consumers.

264.    Toyota had an ongoing duty to all Toyota customers to refrain from unfair and deceptive practices under the Texas DTPA in the course of its business.

265.    Toyota's violations present a continuing risk to Plaintiffs as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

266.    Pursuant to Texas Business and Commercial Code § 17.50, Plaintiff Flowers and the Texas Class seek an order enjoining Toyota's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

267.    On May 5, 2021, Plaintiff Flowers sent a letter by certified mail to Defendants TMC and TMS complying with Texas Business and Commercial Code § 17.505(a).

## COUNT XV

## BREACH OF IMPLIED WARRANTY

### (Tex. Bus. & Com. Code § 2.314)

### (Brought by Plaintiff Flowers against all Defendants on behalf of the Texas Class)

268.    Plaintiff Flowers and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

269.    Plaintiff Flowers brings this cause of action on behalf of herself and the Texas Class.

270.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Texas Business and Commercial Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4).

271.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Texas Business and Commercial Code § 2A.103(a)(16).

272.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§ 2.105(a) and 2A.103(a)(8).

273.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law, pursuant to Texas Business and Commercial Code §§ 2.314 and 2A.212.

274.    Toyota impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation—while the Class Vehicles were being operated.

275.    Toyota breached the implied warranty of merchantability in that the defective Class Vehicles were not in merchantable condition when they were sold to Plaintiff Flowers and Texas Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicle is used because they pose a serious safety risk to the occupants and are an unreliable means of transportation.

276.    Plaintiff Flowers notified Toyota of the defect in the subject vehicles within a reasonable time after Plaintiffs experienced a Battery Defect. Toyota has been provided notice of these issues by numerous complaints, as alleged herein.

277.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiff Flowers and the Texas Class members have suffered damages, including but not limited to incidental and consequential damages.

## COUNT XVI

## BREACH OF EXPRESS WARRANTIES

## (Tex. Bus. & Com. Code § 2.313)

### (Brought by Plaintiff Flowers against all Defendants on behalf of the Texas Class)

278.    Plaintiff Flowers and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

279.    Plaintiff Flowers brings this cause of action on behalf of herself and the Texas Class.

280.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Texas Business and Commercial Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4).

281.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Texas Business and Commercial Code § 2A.103(a)(16).

282.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Business and Commercial Code §§ 2.105(a) and 2A.103(a)(8).

283.    In connection with the sale of the defective Class Vehicles to the Plaintiff Flowers and the Texas Class, Toyota provided a new vehicle warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

284.    Toyota's express warranties were part of the basis of the bargain respecting the purchase and/or lease of the defective Class Vehicles. In addition to written warranties, Toyota warranted several attributes, characteristics, and qualities of the subject vehicles, as alleged above.

285.    Toyota distributed the defective parts causing the Battery Defect in the Class Vehicles, and said parts are covered by Toyota's warranties granted to all purchasers and lessees of the Class Vehicles.

286.    Toyota breached these warranties by selling and leasing Class Vehicles with the Battery Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

287.    Plaintiff Flowers notified Toyota of its breach within a reasonable time, and/or she was not required to do so because affording Toyota a reasonable opportunity to cure its breaches would have been futile. Toyota also knew about the Battery Defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

288.    Plaintiff Flowers submitted her vehicles for warranty repairs as referenced herein. Toyota failed to comply with the terms of the express written warranty provided to Plaintiff, by failing and/or refusing to repair the Battery Defect under the vehicle's warranty as described herein.

289.    Plaintiff Flowers has given Toyota a reasonable opportunity to cure the Battery Defect, but Toyota has been unable and/or has refused to do so within a reasonable time.

290.    As a result of said nonconformities, Plaintiff Flowers cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

291.    Plaintiff Flowers could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiff's acceptance of the subject vehicle.

292.    Plaintiff Flowers would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had she known, prior to her respective time of purchase or lease, that the subject vehicle contained the Battery Defect.

293.    As a direct and proximate result of the willful failure of Toyota to comply with its obligations under the express warranties, Plaintiff Flowers and the Texas Class members have suffered actual and consequential damages. Such damages include, but are not limited to, a diminution in the value of the subject vehicles containing the defects identified herein.

294.    As a direct and proximate cause of Toyota's breach, Plaintiff Flowers and the Texas Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles.

295.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Toyota's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiff Flowers or the Texas Class members.

296.    The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiff Flowers and the Texas Class members. Among other things, Plaintiff Flowers and the Texas Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Plaintiff Flowers and the Texas Class members because Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

297.    Plaintiff Flowers and the Texas Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct.

298.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently

defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff Flowers and the Texas Class members were therefore induced to purchase the defective Class Vehicles under false and/or fraudulent pretenses.

299.    Toyota has been provided notice of these issues by numerous complaints as described herein.

300.    As a direct and proximate result of Toyota's breach of express warranties, Plaintiff Flowers and the Texas Class members have been damaged in an amount to be determined at trial.

**COUNT XVII**

**FRAUD BY CONCEALMENT**

**(Based on Texas Law)**

**(Brought by Plaintiff Flowers against all Defendants on behalf of the Texas Class)**

301.    Plaintiff Flowers and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

302.    Plaintiff Flowers brings this cause of action on behalf of herself and the Texas Class.

303.    Toyota made material omissions concerning a presently existing or past fact in that, for example, Toyota did not fully and truthfully disclose to its customers the true nature of the Battery Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

304.    Toyota was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those

- 114 -

facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

305.    In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota who had superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiff Flowers and the Texas Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

306.    Toyota was in exclusive control of the material facts and such facts were not known to the public or the Texas Class members. Toyota also possessed exclusive knowledge of the defects rendering the Class Vehicles inherently more dangerous and unreliable than similar vehicles.

307.    Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff Flowers and the Texas Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

308.    Plaintiff Flowers and the Texas Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiff Flowers and the Texas Class members were justified.

309.    Plaintiff Flowers and the Texas Class members reasonably relied on these omissions and suffered damages as a result.

310.    As a result of the concealment and/or suppression of the facts, Plaintiff Flowers and the Texas Class members sustained damage. For those Texas Class members who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs and the Texas Class members paid and the actual value of that which they received, together with

additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those who want to rescind the purchase, they are entitled to restitution and consequential damages. Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiff and the Texas Class members in order to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XVIII

## UNJUST ENRICHMENT

### (Based on Texas Law)

### (Brought by Plaintiff Flowers against all Defendants on behalf of the Texas Class)

311.    Plaintiff Flowers and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

312.    Plaintiff Flowers brings this cause of action on behalf of herself and the Texas Class.

313.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design and/or manufacturing defect of their vehicles and the concealment of the defect, Toyota charged a higher price for their vehicles than the vehicles' true value and Toyota obtained monies which rightfully belong to Plaintiff Flowers and the Texas Class members.

314.    Toyota enjoyed the benefit of increased financial gains, to the detriment of Plaintiff Flowers and the Texas Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

315.    Plaintiff Flowers, therefore, seeks an order establishing Toyota as a constructive trustee of the profits unjustly obtained, plus interest.

**E.    Claims Brought on Behalf of the Florida Class**

### COUNT XIX

### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

**(Fla. Stat. § 501.201, *et seq.*)**

**(Brought by Plaintiff Guevara against Defendants TMS, TMNA, and TEMA on behalf of the Florida Class)**

316.    Plaintiff Guevara and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

317.    Plaintiff Guevara brings this cause of action on behalf of herself and the Florida Class.

318.    Plaintiff Guevara and the Florida Class Members are "consumers[s]" under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.203(7).

319.    Toyota engaged in "trade or commerce" in Florida within the meaning of the FDUPTA. *See* Fla. Stat. § 501.203(8).

320.    The FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

321.    Toyota engaged in deceptive trade practices in violation of the FDUPTA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective batteries installed in them. Toyota's deceptive business practices include: (i) representing that its vehicles had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular

- 117 -

standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

322.    Toyota owed Plaintiff Guevara and the Florida Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective batteries installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff Guevara and the Florida Class Members that contradicted these representations.

323.    Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective batteries in Class Vehicles were material to Plaintiff Guevara and the Florida Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

324.    Plaintiff Guevara and the Florida Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose material information. Had they been aware of the defective batteries installed in the Class Vehicles, Plaintiff Guevara and the Florida Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Guevara and the Florida Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

325.    Toyota knew or should have known that its conduct violated the FDUPTA.

326.    Toyota's violations present a continuing risk to Plaintiff Guevara, the Florida Class Members, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

327.    As a direct and proximate result of Toyota's violations of the FDUPTA, Plaintiff Guevara and the Florida Class Members have suffered injury-in-fact and/or actual damages.

328.    Plaintiff Guevara and the Florida Class Members seek, inter alia, actual damages in an amount to be determined at trial, reasonable attorneys' fees; and any other just and proper relief available under the FDUPTA.  Because Toyota acted with willful and conscious disregard of the rights and safety of others, Toyota's conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT XX

## BREACH OF EXPRESS WARRANTY

## (Fla. Stat. §§ 672.313 and 680.21)

### (Brought by Plaintiff Guevara against Defendant TMS on behalf of the Florida Class)

329.    Plaintiff Guevara and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

330.    Plaintiff Guevara brings this cause of action on behalf of herself and the Florida Class.

331.    TMS is and was at all relevant times a "merchant" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d ).

332.    With respect to leases, TMS is and was at all relevant times a "lessor" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

333.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

334.     Plaintiff Guevara and the Florida Class Members bought or leased Toyota RAV4 vehicles equipped with defective 12V Batteries.

335.     TMS made express warranties to Plaintiff Guevara and the Florida Class Members within the meaning of the warranty statutes.

336.     In the course of selling and leasing the Class Vehicles, TMS expressly warranted in writing that the vehicles were covered by certain warranties in TMS's "New Vehicle Limited Warranty" as described herein. This express warranty states that "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota."

337.     The Battery Defect is covered by the New Vehicle Limited Warranty.

338.     The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

339.     TMS breached its express warranties to repair defects in materials and workmanship of any part supplied by TMS. TMS has not repaired, and has been unwilling to reasonably repair, the Battery Defect.

340.     Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Guevara and the Florida Class Members whole and because TMS has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

341.   Accordingly, recovery by Plaintiff Guevara and the Florida Class Members is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

342.   TMS was provided notice of these issues by numerous customer complaints regarding the Battery Defect before or within a reasonable amount of time after the allegations of the Defect became public.

343.   In addition, Plaintiff Guevara gave notice of the Battery Defect in the vehicle via a letter to TMS on June 18, 2021.

344.   However, Plaintiff Guevara was not required to notify TMS of its breach because giving TMS a reasonable opportunity to cure any breach of written warranty would have been futile. TMS was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Batteries or a component thereof, through the NHTSA investigation opened on February 25, 2021, and through other internal sources.

345.   Plaintiff Guevara and the Florida Class Members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their TMS vehicles, or the overpayment or diminution in value of their Class Vehicles.

346.   Plaintiff Guevara and the Florida Class Members are also entitled to costs and reasonable attorneys' fees.

## COUNT XXI

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (F.S.A. §§ 672.314 and 680.12)

**(Brought by Plaintiff Guevara against Defendants TMS, TMNA, and TEMA on behalf of the Florida Class)**

347.    Plaintiff Guevara and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

348.    Plaintiff Guevara brings this cause of action on behalf of herself and the Florida Class.

349.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d ).

350.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

351.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

352.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Fla. Stat. §§ 672.314 and 680.212.

353.    Toyota was and is in actual or constructive privity with Plaintiff and Class Members.

354.    At all relevant times hereto, applicable law imposed upon Toyota a duty that the batteries installed in the Class Vehicles be fit for the ordinary purposes for which batteries are used and that they pass without objection in the trade under the contract description.

355.    Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was an is ineffectual.

356.     The batteries installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Defect at the time the purchase and lease transactions occurred. Thus, the Batteries installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

357.     Plaintiff Guevara and the Florida Class Members used the batteries installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

358.     Toyota had actual knowledge of, and received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

359.     In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Battery Defect associated with the batteries installed in the Class Vehicles.

360.     By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

361.     As a direct and proximate result of Toyota's breach of warranties, Plaintiff Guevara and the Florida Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their batteries.

- 123 -

**F.**     **Claims Brought on Behalf of the Illinois Class**

## COUNT XXII

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT ("CFA")**

**(815 Ill. Comp. Stat. 505/1, *et seq.*)**

**(Brought by Plaintiff Kurkowski against Defendants TMS, TMNA, and TEMA on behalf of the Illinois Class)**

362.     Plaintiff Kurkowski and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

363.     Plaintiff Kurkowski brings this cause of action on behalf of himself and the Illinois Class.

364.     Toyota is a "person" as that term is defined in 815 Ill. Comp. Stat. 295/1(c).

365.     Plaintiff Kurkowski and the Illinois Class Members are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

366.     The CFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of trade or commerce…whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2.

367.     Toyota engaged in deceptive trade practices in violation of the CFA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective batteries installed in them. Toyota's deceptive business practices include: (i) representing that its vehicles had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular

- 124 -

standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

368.    Toyota owed Plaintiff Kurkowski and the Illinois Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective batteries installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff Kurkowski; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff Kurkowski and the Illinois Class Members that contradicted these representations.

369.    Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective batteries in Class Vehicles were material to Plaintiff Kurkowski and the Illinois Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

370.    Plaintiff Kurkowski and the Illinois Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose material information. Had they been aware of the defective batteries installed in the Class Vehicles Plaintiff Kurkowski and the Illinois Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Kurkowski and the Illinois Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

371.    Toyota knew or should have known that its conduct violated the CFA.

372.    Toyota's violations present a continuing risk to Plaintiff Kurkowski, the Illinois Class Members, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

373.    As a direct and proximate result of Toyota's violations of the CFA, Plaintiff Kurkowski and the Illinois Class Members have suffered injury-in-fact and/or actual damages.

374.    Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiff Kurkowski and the Illinois Class Members seek monetary relief against Toyota in the amount of actual damages, as well as punitive damages because Toyota acted with fraud and/or malice and/or was grossly negligent. Plaintiff Kurkowski provided notice of Toyota's violation of the CFA via letter dated June 18, 2021.

375.    Plaintiff Kurkowski and the Illinois Class Members also seek an order enjoining Toyota's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. 505/1 et seq.

## COUNT XXIII

## BREACH OF EXPRESS WARRANTY

### (810 Ill. Comp. Stat. 5/2-313)

**(Brought by Plaintiff Kurkowski against Defendant TMS on behalf of the Illinois Class)**

376.    Plaintiff Kurkowski and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

377.    Plaintiff Kurkowski brings this cause of action on behalf of himself and the Illinois Class.

378.    TMS is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

- 126 -

379.     With respect to leases, TMS is and was at all relevant times a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

380.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

381.     Illinois Plaintiff and Class Members bought or leased Toyota RAV4 vehicles equipped with defective 12V Batteries.

382.     TMS made express warranties to Plaintiff Kurkowski and the Illinois Class Members within the meaning of the warranty statutes.

383.     In the course of selling and leasing the Class Vehicles, TMS expressly warranted in writing that the vehicles were covered by certain warranties in TMS's "New Vehicle Limited Warranty" as described herein. This express warranty states that "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota."

384.     The Battery Defect is covered by the New Vehicle Limited Warranty.

385.     The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

386.     TMS breached its express warranties to repair defects in materials and workmanship of any part supplied by TMS. TMS has not repaired, and has been unwilling to reasonably repair, the Battery Defect.

387.     Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Kurkowski and the Illinois Class Members whole and because TMS has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

388.     Accordingly, recovery by Plaintiff Kurkowski and the Illinois Class Members is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

389.     TMS was provided notice of these issues by numerous customer complaints regarding the Battery Defect before or within a reasonable amount of time after the allegations of the Battery Defect became public.

390.     In addition, Plaintiff Kurkowski himself gave notice of the Battery Defect in his vehicle via a letter to TMS on June 18, 2021.

391.     However, Plaintiff Kurkowski was not required to notify TMS of its breach because giving TMS a reasonable opportunity to cure any breach of written warranty would have been futile. TMS was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Batteries or a component thereof, through the NHTSA investigation opened on February 25, 2021, and through other internal sources.

392.     Plaintiff Kurkowski and the Illinois Class Members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their TMS vehicles, or the overpayment or diminution in value of their Class Vehicles.

393.     Plaintiff Kurkowski and the Illinois Class Members are also entitled to costs and reasonable attorneys' fees.

## COUNT XXIV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (810 Ill. Comp. Stat. 5/2-314)

### (Brought by Plaintiff Kurkowski against Defendants TMS, TMNA, and TEMA on behalf of the Illinois Class)

394.    Plaintiff Kurkowski and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

395.    Plaintiff Kurkowski brings this cause of action on behalf of himself and the Illinois Class.

396.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

397.    With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

398.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

399.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212.

400.    Toyota was and is in actual or constructive privity with Plaintiff and Class Members.

401.    At all relevant times hereto, applicable law imposed upon Toyota a duty that the batteries installed in the Class Vehicles be fit for the ordinary purposes for which batteries are used and that they pass without objection in the trade under the contract description.

402.    Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was an is ineffectual.

- 129 -

403.    The batteries installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Defect at the time the purchase and lease transactions occurred. Thus, the Batteries installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

404.    Plaintiff Kurkowski and the Illinois Class Members used the batteries installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

405.    Toyota had actual knowledge of, and received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

406.    In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Battery Defect associated with the batteries installed in the Class Vehicles.

407.    By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

408.    As a direct and proximate result of Toyota's breach of warranties, Plaintiff Kurkowski and the Illinois Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their batteries.

G.      **Claims Brought on Behalf of the New Hampshire Class**

## COUNT XXV

**VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT**

**(N.H. REV. STAT. ANN. § 358-A:1, *et seq.*)**

**(Brought by Plaintiff Woodman against Defendants TMS, TMNA, and TEMA on behalf of the New Hampshire Class)**

409.    Plaintiff Woodman and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

410.    Plaintiff Woodman brings this cause of action on behalf of himself and the New Hampshire Class.

411.    Plaintiff Woodman, the New Hampshire Class Members, and Toyota are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"). N.H. Rev. Stat. § 358-A:1.

412.    Toyotas actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

413.    The New Hampshire CPA prohibits a person in the conduct of any trade or commerce from using "any unfair or deceptive act or practice," including "but . . . not limited to the following: . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have," "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another," and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

414.    Toyota engaged in deceptive trade practices in violation of the New Hampshire CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective batteries installed in them. Toyota's deceptive business practices

include: (i) representing that its vehicles had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

415.    Toyota owed Plaintiff Woodman and New Hampshire Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective batteries installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff Woodman and New Hampshire Class Members that contradicted these representations.

416.    Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective batteries in Class Vehicles were material to Plaintiff Woodman and New Hampshire Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

417.    Plaintiff Woodman and New Hampshire Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose material information. Had they been aware of the defective batteries installed in the Class Vehicles, Plaintiff Woodman and New Hampshire Class Members either would have paid less for their vehicles or would not have

purchased or leased them at all. Plaintiff Woodman and New Hampshire Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

418.     Toyota knew or should have known that its conduct violated the New Hampshire CPA.

419.     Toyota's violations present a continuing risk to Plaintiff Woodman, the New Hampshire Class, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

420.     As a direct and proximate result of Toyota's violations of the New Hampshire CPA, Plaintiff Woodman and New Hampshire Class Members have suffered injury-in-fact and/or actual damages.

421.     Pursuant to N.H. Rev. Stat. § 358-A:10, Plaintiff Woodman and New Hampshire Class Members seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, and any other just and proper relief available under N.H. Rev. Stat. § 358-A:10.

## COUNT XXVI

## BREACH OF EXPRESS WARRANTY

## (N.H. REV. STAT. §§ 382-A:2-313 AND 382-A:2A-210)

### (Brought by Plaintiff Woodman against Defendant TMS on behalf of the New Hampshire Class)

422.     Plaintiff Woodman and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

423.     Plaintiff Woodman brings this cause of action on behalf of himself and the New Hampshire Class.

424.     TMS is and was at all relevant times a "merchant" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1), and a "seller" of motor vehicles under 382-A:2-103(1)(d).

425.     With respect to leases, TMS is and was at all relevant times a "lessor" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

426.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 2A-103(1)(h).

427.     Plaintiff Woodman and New Hampshire Class Members bought or leased Toyota RAV4 vehicles equipped with defective 12V Batteries.

428.     TMS made express warranties to Plaintiff Woodman and New Hampshire Class Members within the meaning of the warranty statutes.

429.     In the course of selling and leasing the Class Vehicles, TMS expressly warranted in writing that the vehicles were covered by certain warranties in TMS's "New Vehicle Limited Warranty" as described herein. This express warranty states that "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota."

430.     The Battery Defect is covered by the New Vehicle Limited Warranty.

431.     The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

432.     TMS breached its express warranties to repair defects in materials and workmanship of any part supplied by TMS. TMS has not repaired, and has been unwilling to reasonably repair, the Battery Defect.

433.     Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Woodman and New

Hampshire Class Members whole and because TMS has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

434.     Accordingly, recovery by Plaintiff Woodman and New Hampshire Class Members is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

435.     TMS was provided notice of these issues by numerous customer complaints regarding the Battery Defect before or within a reasonable amount of time after the allegations of the Battery Defect became public.

436.     In addition, Plaintiff Woodman himself gave notice of the Battery Defect in his vehicle via a letter to TMS on June 18, 2021.

437.     However, Plaintiff Woodman was not required to notify TMS of its breach because giving TMS a reasonable opportunity to cure any breach of written warranty would have been futile. TMS was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Batteries or a component thereof, through the NHTSA investigation opened on February 25, 2021, and through other internal sources.

438.     Plaintiff Woodman and New Hampshire Class Members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their TMS vehicles, or the overpayment or diminution in value of their Class Vehicles.

439.     Plaintiff Woodman and New Hampshire Class Members are also entitled to costs and reasonable attorneys' fees.

## COUNT XXVII

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212)

**(Brought by Plaintiff Woodman against Defendants TMS, TMNA, and TEMA on behalf of the New Hampshire Class)**

440.     Plaintiff Woodman and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

441.     Plaintiff Woodman brings this cause of action on behalf of himself and the New Hampshire Class.

442.     Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1), and a "seller" of motor vehicles under 382-A:2-103(1)(d).

443.     With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

444.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 2A-103(1)(h).

445.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

446.     Toyota was and is in actual or constructive privity with Plaintiff and Class Members.

447.     At all relevant times hereto, applicable law imposed upon Toyota a duty that the batteries installed in the Class Vehicles be fit for the ordinary purposes for which batteries are used and that they pass without objection in the trade under the contract description.

448.     Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was an is ineffectual.

449.     The batteries installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Defect at the time the purchase and lease transactions occurred. Thus, the Batteries installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

450.     Plaintiff Woodman and New Hampshire Class Members used the batteries installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

451.     Toyota had actual knowledge of, and received timely notice regarding, the Battery Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

452.     In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Battery Defect associated with the batteries installed in the Class Vehicles.

453.     By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

454.     As a direct and proximate result of Toyota's breach of warranties, Plaintiff Woodman and New Hampshire Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their batteries.

**H.**     **Claims Brought on Behalf of the Missouri Class**

### COUNT XXVIII

**VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT**

**(MO. REV. STAT. §§ 407.010, et seq.)**

**(Brought by Plaintiff Huchteman against Defendants TMS, TMNA, and TEMA on behalf of the Missouri Class)**

455.    Plaintiff Huchteman and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

456.    Plaintiff Huchteman brings this cause of action on behalf of himself and the Missouri Class.

457.    Toyota, Plaintiff Huchteman, and Missouri Class Members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

458.    Toyota engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

459.    The Class Vehicles are "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

460.    The Missouri Merchandising Practices Act ("MMPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

461.    Toyota engaged in deceptive trade practices in violation of the MMPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective batteries installed in them. Toyota's deceptive business practices include: (i) representing that its vehicles had characteristics, uses, or benefits which they do not have; (ii) advertising its

goods with intent not to sell them as advertised; (iii) representing that its vehicles are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

462.    Toyota owed Plaintiff Huchteman and Missouri Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective batteries installed in them because Toyota: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff Huchteman and Missouri Class Members that contradicted these representations.

463.    Toyota's failure to disclose and active concealment of the dangers and risks posed by the defective batteries in Class Vehicles were material to Plaintiff Huchteman and Missouri Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

464.    Plaintiff Huchteman and Missouri Class Members suffered ascertainable loss caused by Toyota's misrepresentations and failure to disclose material information. Had they been aware of the defective batteries installed in the Class Vehicles, Plaintiff Huchteman and Missouri Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Huchteman and Missouri Class Members did not receive the benefit of their bargain as a result of Toyota's misconduct.

465.    Toyota knew or should have known that its conduct violated the MMPA.

466.     Toyota's violations present a continuing risk to Plaintiff Huchteman, the Missouri Class, as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

467.     As a direct and proximate result of Toyota's violations of the MMPA, Plaintiff Huchteman and Missouri Class Members have suffered injury-in-fact and/or actual damages.

468.     Toyota is liable to Plaintiff Huchteman and Missouri Class Members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Toyota's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT XXIX

## BREACH OF EXPRESS WARRANTY

## (MO. REV. STAT. §§ 400.2-313)

**(Brought by Plaintiff Huchteman against Defendant TMS on behalf of the Missouri Class)**

469.     Plaintiff Huchteman and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

470.     Plaintiff Huchteman brings this cause of action on behalf of himself and the Missouri Class.

471.     Plaintiff Huchteman and Missouri Class Members are and were at all relevant times buyers under Mo. Rev. Stat. § 400.2-313, a bought the Class Vehicles for personal, family, and/or household purposes.

472.     Toyota is and was at all relevant times a seller of the Class Vehicles under Mo. Rev. Stat. § 400.2-313.

473.     The Class Vehicles at issue constitute goods under Mo. Rev. Stat. § 400.2-313.

474.    Plaintiff Huchteman and Missouri Class Members bought or leased Toyota RAV4 vehicles equipped with defective 12V Batteries.

475.    TMS made express warranties to Plaintiff Huchteman and Missouri Class Members within the meaning of the warranty statutes.

476.    In the course of selling and leasing the Class Vehicles, TMS expressly warranted in writing that the vehicles were covered by certain warranties in TMS's "New Vehicle Limited Warranty" as described herein. This express warranty states that "[t]his warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota."

477.    The Battery Defect is covered by the New Vehicle Limited Warranty.

478.    The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

479.    TMS breached its express warranties to repair defects in materials and workmanship of any part supplied by TMS. TMS has not repaired, and has been unwilling to reasonably repair, the Battery Defect.

480.    Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Huchteman and Missouri Class Members whole and because TMS has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

481.    Accordingly, recovery by Plaintiff Huchteman and Missouri Class Members is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

482.    TMS was provided notice of these issues by numerous customer complaints regarding the Battery Defect before or within a reasonable amount of time after the allegations of the Defect became public.

483.    In addition, Plaintiff Huchteman gave notice of the Battery Defect in the vehicle via a letter to TMS on June 18, 2021.

484.    However, Plaintiff Huchteman was not required to notify TMS of its breach because giving TMS a reasonable opportunity to cure any breach of written warranty would have been futile. TMS was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Batteries or a component thereof, through the NHTSA investigation opened on February 25, 2021, and through other internal sources.

485.    Plaintiff Huchteman and Missouri Class Members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their TMS vehicles, or the overpayment or diminution in value of their Class Vehicles.

486.    Plaintiff Huchteman and Missouri Class Members are also entitled to costs and reasonable attorneys' fees.

## COUNT XXX

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (Mo. Rev. Stat. § 400.2-314(2)(c))

**(Brought by Plaintiff Huchteman against Defendants TMS, TMNA, and TEMA on behalf of the Missouri Class)**

487.    Plaintiff Huchteman and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

488.    Plaintiff Huchteman brings this cause of action on behalf of himself and the Missouri Class.

489.    Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Mo. Rev. Stat. § 400.2-314(1).

490.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. § 400.2-314(1).

491.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Mo. Rev. Stat. § 400.2-314(2)(c).

492.    Toyota was and is in actual or constructive privity with Plaintiff and Class Members.

493.    At all relevant times hereto, applicable law imposed upon Toyota a duty that the batteries installed in the Class Vehicles be fit for the ordinary purposes for which batteries are used and that they pass without objection in the trade under the contract description.

494.    Toyota has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was an is ineffectual.

495.    The Batteries installed in the Class Vehicles were defective at the time they left the possession of Toyota, as set forth above. Toyota knew of this Defect at the time the purchase and lease transactions occurred. Thus, the Batteries installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

496.    Plaintiff Huchteman and Missouri Class Members used the batteries installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Toyota or by operation of law in light of Toyota's unconscionable conduct.

497.    Toyota had actual knowledge of, and received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

498.    In addition, Toyota received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the batteries installed in the Class Vehicles.

499.    By virtue of the conduct described herein and throughout this Complaint, Toyota breached the implied warranty of merchantability.

500.    As a direct and proximate result of Toyota's breach of warranties, Plaintiff Huchteman and Missouri Class Members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their batteries.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully request that this Court:

a.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

b.      appoint Plaintiffs as the representative of the Class and their counsel as Class counsel;

c.      award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and members of the Class are entitled;

d.      award pre-judgment and post-judgment interest on any monetary relief;

e.      grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Toyota to repair, recall, and/or replace the Class vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Battery Defect;

f.      award reasonable attorneys' fees and costs; and

g.      grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.


Dated: September 17, 2021                Respectfully submitted,

                                         By: */s/ Bruce W. Steckler*
                                             Bruce W. Steckler
                                             Austin P. Smith
                                             Paul D. Stickney (Of Counsel)
                                             **STECKLER WAYNE COCHRAN
                                             CHERRY PLLC**
                                             12720 Hillcrest Road, Suite 1045
                                             Dallas, Texas 75230
                                             Telephone: (972) 387-4040
                                             Facsimile: (972) 387-4041
                                             bruce@swclaw.com
                                             austin@swclaw.com
                                             judgestickney@swclaw.com

Kimberly A. Justice (Admitted *Pro Hac Vice*)
Jonathan M. Jagher (Admitted *Pro Hac Vice*)
**FREED KANNER LONDON & MILLEN
LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile: (224) 632-4521
kjustice@fklmlaw.com
jjagher@fklmlaw.com

Douglas A. Millen
**FREED KANNER LONDON & MILLEN
LLC**
2201 Waukegan Road, #130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
dmillen@fklmlaw.com

Peter A. Muhic
**LeVAN MUHIC STAPLETON LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
215.561.1500
pmuhic@levanmuhic.com

Katrina Carroll
**CARLSON LYNCH LLP**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265
Facsimile: (312) 750-1591
kcarroll@carlsonlynch.com

Edwin J. Kilpela
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 253-4996
Facsimile: (412) 231-0346
ekilpela@carlsonlynch.com

Richard D. McCune (Admitted *Pro Hac Vice*)
David C. Wright (Admitted *Pro Hac Vice*)

Steven A. Haskins (Admitted *Pro Hac Vice*)
Mark I. Richards (Admitted *Pro Hac Vice*)
**MCCUNE WRIGHT AREVALO, LLP**
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
sah@mccunewright.com
mir@mccunewright.com

Thomas B. Bennett (Texas Bar No. 02151400)
tbennett@baileyglasser.com
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Todd A. Walburg (Admitted *Pro Hac Vice*)
twalburg@baileyglasser.com
**BAILEY & GLASSER LLP**
1999 Harrison Street, Suite 660
Oakland, California 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291

John G. Emerson (SBOT 006602600)
**EMERSON LAW FIRM, PLLC**
2500 Wilcrest, Suite 300
Houston, TX 77042
Phone (800) 551-8649
Fax: (501) 268-4659
E-mail: jemerson@emersonfirm.com

Tarek H. Zohdy (SBN 247775)
Cody R. Padgett (SBN 275553)
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396
Tarek.Zohdy@capstonelawyers.com
Cody.Padgett@capstonelawyers.com

Russell D. Paul (admitted *Pro Hac Vice*)
Abigail Gertner (admitted *Pro Hac Vice*)
Amey J. Park (admitted *Pro Hac Vice*)
**Berger Montague PC**
1818 Market Street, Suite 3600
Tel.: (215) 875-3000
Fax: (215) 875-4604
Email:  rpaul@bm.net
          agertner@bm.net
          apark@bm.net

Greg Coleman
Ryan P. McMillan
**Milberg Coleman Bryson Phillips**
**Grossman LLP**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-232-1315
gcoleman@milberg.com
rmcmillan@milberg.com

*Attorneys for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document

was served on counsel of record via the CM/ECF system of the United States District Court for

the Eastern District of Texas on September 17, 2021.

*/s/ Bruce W. Steckler*
Bruce W. Steckler
